91 S.W.3d 18 (2002)
In the Interest of K.M.B., A Child.
No. 2-01-264-CV.
Court of Appeals of Texas, Fort Worth.
November 7, 2002.
*22 Cindy Stormer, John H. Morris, Gainesville, for Appellants.
Charles E. Rice, Regional Attorney for the Texas Department of Protective and Regulatory Services, Abilene, for Appellee.
Panel B: LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

OPINION
TERRIE LIVINGSTON, Justice.
This is an appeal from a jury verdict terminating the parental rights of Kristin Butler ("Kristin") and Phillip Burleson ("Phillip") to K.M.B. Kristin and Phillip contend that the evidence is legally and factually insufficient to support the jury's verdict. Kristin also argues that (1) the trial court erred in overruling a Batson/Edmonson challenge based on race; (2) the trial court erred in overruling her objection to the jury charge because the Texas Department of Protective and Regulatory Services ("TDPRS") provided no evidence that it made reasonable efforts to return the child; (3) the trial court improperly exempted a caseworker from "the Rule"; and (4) the trial court improperly overruled a Texas Rule of Evidence 403 objection to the admission of two photographs showing a severe diaper rash on K.M.B.'s sibling. We affirm.

I. Facts
In 1994 Kristin Butler and Phillip Burleson began dating. She was convicted of marijuana possession in June of 1994. She gave birth to K.M.B. in July of 1995. From 1991 to 2001, Phillip was on parole for a 1991 conviction for possession of cocaine with intent to deliver. Before K.M.B.'s birth, Phillip left town and saw his daughter only three times over the next six years. He also never provided the child with any financial support.
TDPRS got involved with the family in April of 1997 when it received allegations that Kristin was physically neglecting her children. Over the next few years, TDPRS removed K.M.B. on three occasions, and eventually the court granted conservatorship to TDPRS. During TDPRS's investigations, it found K.M.B. infested with head lice and living among cat feces in a filthy home. Kristin also admitted that she continued using drugs during TDPRS's involvement. TDPRS looked into the possibility of placing *23 K.M.B. with her maternal grandmother, Jan Stroud, but found that her home also had foul smells, cat feces, and roach infestation.
TDPRS developed service plans for Kristin to follow that would allow her to get K.M.B. back; however, she had difficulty following through with the plans, which included drug counseling, employment, and a psychological exam. TDPRS eventually took conservatorship of K.M.B. and placed her in a foster home. Prior to trial in 2000, Kristin had not visited K.M.B. in ten months.

II. Discussion

A. Burden of Proof and Standard of Review
A parent's rights to "the companionship, care, custody and management" of his or her children are constitutional interests "far more precious than any property right." Santosky v. Kramer, 455 U.S. 745, 758-59, 102 S.Ct. 1388, 1397, 71 L.Ed.2d 599 (1982). In a termination case, the State seeks not just to limit those rights but to end them permanentlyto divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit. Tex. Fam. Code Ann. § 161.206(b) (Vernon 2002); Holick v. Smith, 685 S.W.2d 18, 20 (Tex.1985).
In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must establish one or more of the acts or omissions enumerated under subdivision (1) of the statute and must also prove that termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001; Richardson v. Green, 677 S.W.2d 497, 499 (Tex.1984). Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact. Tex. Dep't of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex.1987).
Termination of parental rights is a drastic remedy and is of such weight and gravity that due process requires the petitioner to justify termination by "clear and convincing evidence." Tex. Fam. Code Ann. § 161.206(a). This standard is defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Id. § 101.007; Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 31 (Tex.1994). This intermediate standard falls between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. State v. Addington, 588 S.W.2d 569, 570 (Tex.1979); In re D.T., 34 S.W.3d 625, 630 (Tex.App.-Fort Worth 2000, pet. denied) (op. on reh'g). While the proof must be more than merely the greater weight of the credible evidence, there is no requirement that the evidence be unequivocal or undisputed. Addington, 588 S.W.2d at 570. Termination proceedings should be strictly scrutinized, and involuntary termination statutes are strictly construed in favor of the parent. Holick, 685 S.W.2d at 20-21; In re A.V., 849 S.W.2d 393, 400 (Tex.App.-Fort Worth 1993, no writ).
In determining a "no-evidence" issue, we are to consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. Bradford v. Vento, 48 S.W.3d 749, 754 (Tex.2001); Cont'l Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex.1996); In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). Anything more than a scintilla of evidence is legally sufficient to support the finding. Cazarez, 937 S.W.2d at 450; *24 Leitch v. Hornsby, 935 S.W.2d 114, 118 (Tex.1996).
A "no-evidence" issue may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. Uniroyal Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex.1998) (citing Robert W. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex. L. Rev. 361, 362-63 (1960)), cert. denied, 526 U.S. 1040, 119 S.Ct. 1336, 143 L.Ed.2d 500 (1999). There is some evidence when the proof supplies a reasonable basis on which reasonable minds may reach different conclusions about the existence of the vital fact. Orozco v. Sander, 824 S.W.2d 555, 556 (Tex.1992).
In determining a factual sufficiency point, the higher burden of proof in termination cases alters the appellate standard of review. In re C.H., 89 S.W.3d 17, 26 (Tex.2002). "[A] finding that must be based on clear and convincing evidence cannot be viewed on appeal the same as one that may be sustained on a mere preponderance." Id. In considering whether evidence rises to the level of being clear and convincing, we must consider whether the evidence is sufficient to produce in the mind of the fact finder a firm belief or conviction as to the truth of the allegation sought to be established. Id. Our inquiry here is whether, on the entire record, a fact finder could reasonably form a firm conviction or belief that the parent endangered the children and that the termination of the parent's parental rights would be in the best interest of the children. Id. 89 at 29.

B. Sufficiency of EvidenceKristin
Kristin alleges that the evidence is legally insufficient to show that (1) she knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endangered the physical or emotional well-being of K.M.B.; (2) she engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the physical or emotional well-being of the child; or (3) she constructively abandoned K.M.B.
During the trial, several witnesses testified to the conditions of Kristin's homes, which included roach and lice problems, animal feces, terrible odors, and general filth. For awhile, K.M.B. and Kristin also lived with Kristin's mother, Jan Stroud. Not only did Kristin's homes suffer from these conditions, but friends also testified that Stroud's home suffered from similar problems. Kristin left K.M.B. in these conditions for part of a summer. While testifying, Kristin even admitted to leaving K.M.B. in incapable child care. By allowing K.M.B. to live in such unsanitary conditions in her own home and another's home, Kristin endangered K.M.B.'s physical well-being. The record shows substantially more than a scintilla of evidence to support the jury's finding that Kristin knowingly placed or knowingly allowed K.M.B. to remain in conditions or surroundings that endangered her physical or emotional well-being. See In re M.C., 917 S.W.2d 268, 270 (Tex.1996) (holding that a mother endangered her children by allowing them to live in extraordinarily unsanitary conditions, which included roach infestation, garbage, and feces); In re J.R., 991 S.W.2d 318, 321 (Tex.App.-Fort Worth 1999, no pet.) (determining that the evidence of neglect and a home smelling like *25 urine was legally and factually sufficient to support termination under section 161.001(1)(D)).
In addition to the filthy living conditions, Kristin continued her drug use. Even though she never did drugs around K.M.B., Kristin admitted to still having a drug problem. Therefore, the record also shows more than a scintilla of evidence to support the jury's finding that Kristin's continued drug use endangered the physical or emotional well-being of K.M.B. See In re W.A.B., 979 S.W.2d 804, 807 (Tex.App.-Houston [14th Dist.] 1998, pet. denied) (holding that evidence of continued drug use after pregnancy may be conduct which endangers a child's well-being under section 161.001(1)(E)); see also In re B.B., 971 S.W.2d 160, 169 (Tex.App.-Beaumont 1998, pet. denied) (holding that endangering conduct need not be engaged in in the child's presence).
TDPRS also alleged that Kristin had constructively abandoned K.M.B. The Texas Family Code provides for termination if a child has been in the permanent or temporary managing conservatorship of an authorized agency for not less than six months, and (i) the department or authorized agency has made reasonable efforts to return the child to the parent; (ii) the parent has not regularly visited or maintained significant contact with the child; and (iii) the parent has demonstrated an inability to provide the child with a safe environment. Tex. Fam.Code Ann. § 161.001(1)(N).
The trial court entered an order on February 15, 2000 making TDPRS temporary managing conservator of K.M.B. Because the trial occurred in July of 2001, nearly seventeen months later, the threshold six-month requirement was met.
Kristin alleges that the State made no efforts to return K.M.B. to her. To the contrary, the evidence shows TDPRS prepared several service plans that were designed to help Kristin; however, she never completed any of them. After TDPRS returned K.M.B. to Kristin in October of 1997, it removed her again after only one month. When asked why TDPRS intervened, Kristin said that she did not really remember, but "[i]t had something to do with me not following through with everything." The court even advised her that failure to comply with the provisions might result in further restrictions to K.M.B. Based on this, the record contains ample evidence to establish that TDPRS made efforts to work with Kristin on the service plans; however, Kristin failed to complete any of them. Therefore, the State showed it made reasonable efforts to return K.M.B. under the first element of section 161.001(1)(N). Tex. Fam.Code Ann. § 161.001(1)(N)(i).
The last two elements required to establish constructive abandonment are that the parent has not regularly visited or maintained significant contact with the child and that the parent has demonstrated an inability to provide the child with a safe environment. Tex. Fam.Code Ann. § 161.001(1)(N)(ii)-(iii). These elements are well-documented in the record. As discussed previously several witnesses, including Kristin, testified that K.M.B. lived in unsanitary, unsafe conditions and with individuals who were not the best choices for her care. Also, the record indicates that Kristin did not see K.M.B. for ten months prior to trial. Based on this, we conclude TDPRS presented more than a scintilla of evidence for the jury to find constructive abandonment of K.M.B. under the Texas Family Code. The evidence is legally sufficient to support constructive abandonment under Texas Family Code section 161.001(1)(N). Therefore, we overrule Kristin's legal sufficiency challenge.
*26 Further Kristin challenges the factual sufficiency of the evidence to support the jury's verdict. A complaint of factual insufficiency of the evidence to support a jury answer must be raised in a motion for new trial. Tex.R. Civ. P. 324(b)(2). Because Kristin failed to file a motion for new trial, she did not preserve error on this point. See Tex.R.App. P. 33.1. Therefore, we overrule Kristin's factual sufficiency challenge. Kristin's first point is overruled.

C. Sufficiency of EvidencePhillip
In Phillip's sole point, he contends the trial court erred in terminating his parental rights because the evidence fails to meet the burden of clear and convincing evidence as required in termination cases. Because Phillip does not make it clear from his brief whether he is challenging the legal or factual sufficiency of the evidence, we will address both. See Tex. Mexican Ry. Co. v. Bouchet, 963 S.W.2d 52, 54 (Tex.1998) (stating that courts should liberally construe briefing rules). The jury had to determine whether Phillip (1) voluntarily left K.M.B. in the possession of another without providing adequate support of the child and remained away for a period of at least six months, (2) knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endangered the physical or emotional well-being of K.M.B., or (3) engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the physical or emotional well-being of K.M.B. See Tex. Fam.Code Ann. § 161.001(1)(C)-(E).
The evidence shows that Phillip voluntarily left Kristin before K.M.B.'s birth and failed to provide support for her even when he was working. He saw K.M.B. only three times from her birth until the trial, at which time she was six years old, and one of the visits occurred after he was notified of TDPRS's involvement with K.M.B. Although he claimed that he felt helpless and that TDPRS never followed up on a home study or service plan for him, the evidence shows that he made only one attempt to set up visitation. When he could not make the visitation, he did nothing to reschedule. Melody Wheeler, the current caseworker, testified that Phillip had a service plan with only three requirements. He had to keep TDPRS informed of his location, which at the time of trial was prison, to write K.M.B. monthly, and to stop his criminal activity. Phillip never wrote K.M.B. Based on this, we conclude that TDPRS presented more than a scintilla of evidence for the jury to find that Phillip voluntarily left K.M.B. in the possession of another without providing adequate support and remained away for a period of at least six months. See Tex. Fam.Code Ann. § 161.001(1)(C).
Besides voluntarily leaving K.M.B. without adequate support for at least six months, Phillip knew K.M.B. was living in horrible conditions. When TDPRS first contacted Phillip, it told him that K.M.B. was removed because of unsafe and unsanitary conditions, and he did nothing about it. By failing to get involved, Phillip knowingly allowed K.M.B. to remain in such conditions that endangered her emotional and physical well-being and knowingly allowed her to remain with someone who engaged in conduct that endangered her well-being. Based on this, we conclude that TDPRS presented more than a scintilla of evidence for the jury to find that Phillip's parental rights should be terminated under section 161.001(1)(D) and (E). Tex. Fam.Code Ann. § 161.001(1)(D)-(E).
After reviewing the evidence in the record supporting the jury finding and disregarding all inferences to the contrary, *27 more than a scintilla of evidence exists to support the legal sufficiency of the jury's verdict on these elements. Therefore, Phillip's legal sufficiency point is overruled.
Furthermore, after reviewing the entire record, we hold that the factfinder could reasonably form a firm conviction or belief about TDPRS's allegations. See C.H., 89 S.W.3d at 29. As mentioned previously, Phillip saw K.M.B. only three times in six years, and he failed to provide her with support. He also allowed her to remain in a roach-infested, foul-smelling house and did nothing to help her. Based on this the jury could form a firm conviction or belief that Phillip voluntarily left K.M.B. without providing adequate support, that he knowingly allowed K.M.B. to remain in conditions endangering K.M.B.'s physical or emotional well-being, and that he knowingly placed K.M.B. with persons who engaged in conduct that endangered her physical or emotional well-being. Therefore, Phillip's factual insufficiency point is overruled. Because we have overruled Phillip's legal and factual sufficiency challenges, we overrule Phillip's sole point.

D. Batson/Edmonson Challenge
In Kristin's fifth point, she challenges the trial court's ruling on her Batson/Edmonson objection to the State's peremptory challenge. To preserve a Batson/Edmonson challenge, the complaining party must object to the peremptory strike before the jury is sworn. Jones v. Martin K. Eby Const. Co., 841 S.W.2d 426, 429 (Tex.App.-Dallas 1992, writ denied). Here, the jury panel had been dismissed and the jury sworn before Kristin objected to the State's peremptory strike. Because she failed to timely object, Kristin has waived her challenge. We overrule her fifth point.

E. Objection to Jury Charge
In Kristin's second point, she contends that the trial court erred in overruling her objection to part of the jury instruction because TDPRS provided no evidence that it made reasonable efforts to return the child. See Tex. Fam.Code Ann. § 161.001(1)(N). The standard for review of a jury charge is abuse of discretion, and it occurs only when the trial court acts without reference to any guiding principle. Tex. Dept. of Human Servs. v. E.B., 802 S.W.2d 647, 649 (Tex.1990) (op. on reh'g). Rule 277 of the Texas Rules of Civil Procedure requires a trial court to submit "such instructions and definitions as shall be proper to enable the jury to render a verdict." Tex.R. Civ. P. 277. This rule affords the trial court considerable discretion in deciding what instructions are necessary and proper in submitting issues to the jury. State Farm Lloyds v. Nicolau, 951 S.W.2d 444, 451 (Tex.1997).
For an instruction to be proper, it must (1) assist the jury, (2) accurately state the law, and (3) find support in the pleadings and the evidence. Owens-Corning Fiberglas Corp. v. Martin, 942 S.W.2d 712, 721 (Tex.App.-Dallas 1997, no writ). As discussed in section II.B., TDPRS provided adequate evidence that it developed numerous service plans to help Kristin get K.M.B. returned. The trial court properly determined that TDPRS presented sufficient evidence to instruct the jury on constructive abandonment under section 161.001 of the family code. Tex. Fam.Code Ann. § 161.001(1)(N). The instruction assisted the jury in reaching its verdict and accurately tracked the language of the statute. See Tex. Dept. of Human Servs., 802 S.W.2d at 649 (holding that the court did not abuse its discretion by tracking the statutory language in the instruction). Given the broad latitude that trial courts have in giving jury instructions, we cannot *28 say that the trial court acted without any regard to guiding principles in deciding what issues were necessary and proper. We overrule Kristin's second point.

F. Exemption from "the Rule"
In Kristin's third point, she contends that the court committed reversible error by overruling her objection to a caseworker's testimony because "the Rule" had been invoked, and the caseworker sat in the courtroom throughout the trial.
Sequestration of witnesses in Texas is governed by the Texas Rule of Civil Procedure 267 and the Texas Rule of Evidence 614. Tex.R. Civ. P. 267; Tex.R. Evid. 614. When the Rule is invoked, witnesses for both sides are sworn and removed from the courtroom where they can not hear others testify. Tex.R. Civ. P. 267. Certain classes of witnesses are exempt from the Rule including, (1) a party who is a natural person or the spouse of such natural person, (2) an officer or employee of a party that is not a natural person and who is designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of the cause. Id. The policy behind the Rule is to minimize "witnesses' tailoring their testimony in response to that of other witnesses and prevent[ing] collusion among witnesses testifying for the same side." Drilex Sys., Inc. v. Flores, 1 S.W.3d 112, 116 (Tex.1999). If the Rule is violated, the trial court may, taking into consideration all of the circumstances, allow the testimony of the potential witness, exclude the testimony, or hold the person in contempt. Id. at 117. Here, Melody Wheeler remained sitting at counsel's table and the trial court allowed her to testify as TDPRS's last witness.
A trial court's rulings in admitting or excluding evidence are reviewable under an abuse of discretion standard. Nat'l Liab. & Fire Ins. Co. v. Allen, 15 S.W.3d 525, 527-28 (Tex.2000). An appellate court must uphold the trial court's ruling if there is any legitimate basis in the record for the ruling. Owens-Corning Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex.1998). Here, TDPRS's attorney stated during voir dire that Melody Wheeler was a caseworker employed by the agency, and the jury could expect to be seeing her throughout the trial. She sat at counsel's table throughout the trial, even after the Rule was invoked. Kristin did not object to her presence until TDPRS called her as its last witness.
Although TDPRS may not have specifically stated that Wheeler was its designated representative, her introduction during voir dire and her continuous presence at counsel's table made it apparent that she was acting as TDPRS's designated representative. The fact that Wheeler was introduced and sat at counsel table is enough to infer she was TDPRS's designated representative. These circumstances created a legitimate basis in the record for the court's ruling that TDPRS could call her as a witness.
Even assuming TDPRS had violated the Rule, the trial court still had discretion to allow her testimony after considering all the circumstances. See Drilex Sys., Inc., 1 S.W.3d at 117 (stating that if the Rule is violated, the trial court may, taking into consideration all of the circumstances, allow the testimony of the potential witness). Also, Kristin fails to demonstrate how admission of Wheeler's testimony probably resulted in an improper judgment. In fact, the record reflects sufficient evidence beyond Wheeler's testimony on which the jury could have concluded that termination of Kristin's parental rights was in the best interest of K.M.B. See Garza v. Cole, 753 S.W.2d 245, 247 (Tex.App.-Houston [14th *29 Dist.] 1987, writ ref'd n.r.e.) (holding that the trial court did not abuse its discretion by letting a video technician, who violated the Rule, testify when the record reflected sufficient evidence on which the jury could have found for appellees). We therefore conclude that the trial court did not abuse its discretion by allowing Wheeler to testify. Kristin's third point is overruled.

G. Admission of Photographs
In Kristin's fourth point, she argues that the trial court improperly overruled a Texas Rule of Evidence 403 objection to the admission of two photographs showing a severe diaper rash on K.M.B.'s sibling. Because TDPRS also had to prove that termination of parental rights was in the child's best interest, it argued that Kristin engaged in conduct that was harmful to the emotional or physical well-being of K.M.B. and that she was basically a bad parent who did not provide K.M.B. with the nurturing that she needed and deserved.
Visual or demonstrative evidence is admissible if it tends to resolve a relevant issue, as long as its probative value substantially outweighs the danger of unfair prejudice. Tex.R. Evid. 403. Whether evidence is admitted or excluded is within the trial court's discretion. City of Brownsville v. Alvarado, 897 S.W.2d 750, 753 (Tex.1995). To obtain a reversal based on error in admission of evidence, an appellant must show that the ruling was in error, a substantial right of appellant's was affected, and the error probably caused the rendition of an improper judgment. Id.; see also Tex.R. Evid. 103(a); Tex.R.App. P. 44.1(a). To determine whether the error probably resulted in an improper judgment, an appellate court must review the entire record. City of Brownsville, 897 S.W.2d at 754. Reversible error does not usually occur in connection with evidentiary rulings unless the whole case turns on the particular evidence admitted or excluded. Garza v. Guerrero, 993 S.W.2d 137, 140 (Tex.App.-San Antonio 1999, no pet.).
The Texas Supreme Court has set forth several factors to consider when determining whether termination is in a child's best interest. Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex.1976). One such factor that the jury may consider is parenting ability. Id. Evidence showing Kristin's parenting ability, even towards her other child, could help the jury determine if termination was in K.M.B.'s best interest. Because the trial court could reasonably conclude that the photographs were relevant to parenting ability, it did not abuse its discretion in admitting the two photographs. Kristin's fourth point is overruled.

III. Conclusion
After reviewing the record and overruling all of Kristin's and Phillip's points, we affirm the trial court's judgment.