NO. 07-08-0457-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

FEBRUARY 27, 2009

______________________________

ASHLEY MCCALL STOKES, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_________________________________

FROM THE COUNTY COURT AT LAW NO. 1 OF POTTER COUNTY;

NO. 121,944; HONORABLE W. F. “CORKY” ROBERTS, JUDGE

_______________________________

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

ON ABATEMENT AND REMAND

Following a plea of guilty to the offense of driving while intoxicated appellant, Ashley McCall Stokes, was sentenced to confinement in the county jail for 120 days and was fined $500.  The jail sentence was then probated for 18 months.  The clerk’s record was filed on December 15, 2008.

Texas Rule of Appellate Procedure 25.2(a)(2) requires that a trial court shall enter a Certification of Defendant’s Right of Appeal each time it enters a judgment of guilt or other appealable order.  
Tex. R. App. P. 
25.2(a)(2); 
Hargesheimer v. State
, 182 S.W.3d 906, 911 (Tex.Crim.App. 2006).  An appeal must be dismissed if the certification has not been made part of the record under the applicable rules.  
Tex. R. App. P. 
25.2(d).  An appellate court that has an appellate record that includes a certification is obligated to review the record to ascertain whether the certification is defective.  
Dears v. State
, 154 S.W.3d 610, 615 (Tex.Crim.App. 2005).  

Pursuant to an amendment to Rule 25.2(d), which became effective on September 1, 2007, the certification of defendant’s right of appeal must be signed by the defendant and a copy must be given to her.  
Tex. R. App. P. 
25.2(d).  Additionally, the certification shall include a notice that the defendant has been informed of her rights concerning appeal, as well as her right to file a 
pro se 
petition for discretionary review.
(footnote: 1)  

The clerk’s record does not contain a certification of appellant’s right to appeal.  Furthermore, it does not reflect whether a copy of the certification was given to the defendant nor does it indicate whether the defendant was given the required admonishments.  Furthermore, our letter of December 17, 2008, directed the trial court to file a certification within 30 days.  Additionally, our letter directed the trial court clerk to file a supplemental record containing the certification within 15 days from the date the certification was filed.  To date, this court has not received a supplemental clerk’s record containing a properly executed certification.  
See
 
Tex. R. App. P
. 34.5(c)(1).

Consequently, we abate this appeal and remand the cause to the trial court for further proceedings.  
See
 
Tex. R. App. P
. 34.5(c)(2).  Upon remand, the trial court shall utilize whatever means necessary to secure a Certification of Defendant’s Right of Appeal in compliance with Rule 25.2(d).  Once properly executed, the certification shall be included in a supplemental clerk’s record and filed with the Clerk of this Court on or before March 16, 2009.  
Id
.

This order constitutes notice to all parties of the defective certification pursuant to Rule 37.1 of the Texas Rules of Appellate Procedure.  
See
 
Tex. R. App. P
. 37.1.  If a supplemental clerk’s record containing a proper certification is not filed in accordance with this order, this matter will be referred to the Court for dismissal.  
See
 
Tex. R. App. P
. 25.2(d).

It is so ordered.

Per Curiam

Do not publish.  

ÑÃâåÆåßÑof an actual injury to the child, or even a concrete threat of injury.  
Id.
  The child need only be exposed to loss or injury or have his physical or emotional well-being jeopardized.  
Id.
  
Finally, unsanitary conditions can qualify as surroundings that endanger a child.  
 
In re C.L.C., 
119 S.W.3d 382, 392-93 (Tex. App.–Tyler 2003, no pet.)
; 
see also In re P.E.W.
, 105 S.W.3d at 777-79 (considering the unsanitary conditions of the home, 
e.g.
 cockroaches, dirty dishes and floors, food on the floor, and an un-flushed toilet, as a factor in determining whether to terminate the parent-child relationship); 
In re K.M.B., 
91 S.W.3d 18, 24 (Tex. App.–Fort Worth 2002, no pet.) (holding that the presence of roaches, lice, animal feces, terrible odors and general filth as well as an admission that the children were left with incapable child care supported a finding that the children’s well-being was endangered).  
So too can the awareness of a potential risk to the child of sexual abuse result in termination if the risk is ignored by the parent.  
In re A.B.
, 125 S.W.3d 769, 775-76 (Tex. App.–Texarkana 2003, pet. denied); 
In re R.G., 
61 S.W.3d 661, 667 (Tex. App.–Waco 2001, no pet.).
  

Application of Law

Jennifer had a history with the Texas Department of Protective and Regulatory Services (the Department) since June of 2000.  Tifphany Hill, a caseworker for the Department, testified that H.B. and B.P. (approximately four and two years of age, respectively, at the time of trial) were removed from the home of Jennifer in August 2002 as a result of her visiting it and attempting to obtain entry for 45 minutes.  During that time, she heard children inside the apartment but no one responded to her knocking.  Eventually she gained access through the apartment manager.  When she entered, she observed H.B. standing in front of the sofa and B.P. in a soiled playpen crying.  She yelled out in effort to determine if an adult was present.  No one responded.  Hill did finally locate Jennifer asleep in the bedroom with a male companion.  Upon Hill’s third request for Jennifer to rouse herself, Jennifer complied.  

There was animal urine and feces in the apartment.  One of the children was seen walking barefoot in it.  Another child had a bottle of curdled milk.  There were also dirty dishes present.  So too were flies everywhere; some attempted to alight on the faces and in the mouths of the children.  One of the children was also seen to be unclean and wearing clothes that did not match the child’s size; this led Hill to believe that the youth dressed herself.  The other child wore, as previously mentioned, a soiled diaper.  Furthermore, the children had access to a tattoo gun with needles, spray painted towels, paints, cigarette lighters, cigarette butts, and cereal resting in a bowl on the floor, which cereal was apparently meant for the dog. 

Amber Gibson, the stepmother of one of Jennifer’s older daughters, also confirmed that “95 percent” of the time she went to pick up her stepdaughter there were dirty clothes everywhere.  On one occasion, when Gibson arrived to take the child, the dirty clothes were stacked inside a closet “about four foot deep.”  And, when she asked Jennifer to give her clothes for the child, Jennifer simply reached into the stack and handed her dirty items.   Also seen by Gibson were dishes piled in the sink for several days.  Bottles of curdled milk would be lying on the floor.  Trash and toys would be strewn about.  H.B. was “often dirty” and her hair would be matted to her head.  And, Gibson’s stepdaughter “at times . . . would come to [her] house with caked dirt around her mouth and in her hands and on her scalp.”       Mary Floyd, the grandmother of another of Jennifer’s older daughters (and now that child’s managing conservator) testified that Jennifer had in the past left her granddaughter with an individual named Hugh for three days without enough food or clothing.  Jennifer would also leave the child with Floyd for extended periods of time without attempting to contact the girl.  Next, according to Floyd, Jennifer’s “house was . . . beyond dirty from one end to the other.”  And, often Floyd’s grandchild would be dirty when she arrived to pick the girl up. 

When called to testify, Glenda Joan Maxwell said that Jennifer would leave all her children on multiple occasions and for extended periods (
e.g.
 three or four days) with Maxwell’s brother, Hugh.  The latter had a mental handicap and was considered to be “[l]ow functioning.”  Furthermore, Maxwell was not aware of Hugh having any type of training to care for children.  Maxwell also informed Jennifer of rumors that Hugh “had touched her girls inappropriately.”  And, on one occasion the girls were found, in Hugh’s house, only in panties or towels.  Because of the rumors, Jennifer was asked to stop leaving her children with him.  The request went unheeded.  Jennifer continued to take the girls to his house.  Eventually, Hugh was indicted or charged with indecency with children.
(footnote: 3)
 Continually exposing the children to unsanitary living conditions, allowing them to remain physically dirty, allowing them to be cared for over extended periods of time by a “low functioning” mentally handicapped person who lacked training in the area of child care, failing to provide for the children when left with Hugh for extended periods, and ignoring the warnings about their exposure to potential sexual abuse constitutes ample evidence entitling a reasonable factfinder to form a firm belief or conviction that Jennifer knowingly placed or knowingly allowed her children to remain in conditions or surroundings which endangered the physical or emotional well-being of H.B. and B.P.  
This is so despite Jennifer’s denial that she had any weaknesses in her parenting skills.  Consequently, there is both legally and factually sufficient evidence to support the trial court’s finding that §161.001(1)(D) of the Texas Family Code had been satisfied.

Having found the evidence sufficient to support termination under §161.001(1)(D), it is unnecessary for us to address the other statutory ground upon which termination was based.  Accordingly, we overrule Jennifer’s contention and affirm the order of termination.

Brian Quinn 

   Justice

FOOTNOTES
1: The proper form for Certification of Defendant’s Right of Appeal is contained in Appendix D of the 2008 Texas Rules of Appellate Procedure.

3: