

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-17-00279-CV

IN THE INTEREST OF G.T.,
A CHILD

----------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 323-103614-16

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

This is an ultra-accelerated appeal[2] in which Appellant G.A.T. (Mother)

appeals the termination of her parental rights to her child, G.A. following a bench

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. R. Jud. Admin. 6.2(a) (requiring appellate courts to dispose of appeal from a judgment terminating parental rights, so far as reasonably possible, within 180 days after notice of appeal is filed).

trial.[3]  One witness testified at the trial:  Angelica Matthews, Mother's Department of Family and Protective Services caseworker.  Mother raises three issues; the two dispositive issues that we address in this appeal are whether the evidence is legally and factually sufficient to support the trial court's constructive abandonment and best-interest findings.  *See* Tex. Fam. Code Ann. §§ 161.001(b)(1)(N), (b)(2) (West 2014 & Supp. 2017).  Because the evidence is legally and factually sufficient to support these findings, we will affirm the trial court's judgment.

## II.  THE TERMINATION TRIAL

### A.  Testimony of Angelica Matthews

The Department's conservatorship worker, Angelica Matthews, testified that she was Mother's caseworker when Mother, a minor, came into the Department's care in March or April of 2016, and that Mother was pregnant at the time.  Mother was involved in prostitution prior to entering the Department's care.  Mother subsequently ran away from the Department's care.  Matthews testified that Mother has a history and pattern of running away from the Department's care.

Eventually, Matthews received a telephone call from the hospital, informing her that Mother was in the hospital and had just given birth to G.A.  Matthews said that at this time the Department took G.A. into care because the Department

---

[3]*See* Tex. R. App. P. 9.8(b)(2) (requiring court to use aliases to refer to minors in an appeal from a judgment terminating parental rights).

feared that Mother would run away with G.A. Matthews was also the caseworker assigned to G.A.'s case. At the hospital, Matthews visited with Mother and discussed a plan to help Mother provide a safe, stable home for G.A.

About a week and a half after G.A. was born, Matthews presented and reviewed a service plan with Mother. The service plan called for Mother to take parenting classes, attend counseling, return to school, remain in the Department's care and not run, maintain contact and a relationship with G.A., and maintain contact with Matthews as the caseworker. Matthews said the Department wanted Mother to do some counseling to try to bridge some of the broken ties between Mother and her family because Mother would need support from her family for herself and G.A. to remain in care, go back to school, and not run. Around this time, Mother admitted to Matthews that to pay her rent, she had been prostituting herself.

Ms. Matthews testified that the plan went well for approximately the first two weeks but then Mother ran away from care. The Department located Mother at a paternal cousin's home and placed her in a shelter, but Mother ran away a few hours later. Ms. Matthews testified at the trial on July 17, 2017, that she has not had face-to-face contact with Mother since that date, which was in August 2016.

Although between August 30, 2016, and April 26, 2017, Ms. Matthews contacted Mother via text messages, e-mails, and phone calls and encouraged Mother to return to care so that she could see G.A., Mother refused to return to

3

care and did not see G.A. during this approximately eight-month time period. Ms. Matthews testified that she attempted to locate Mother, and was concerned that Mother was not in a safe environment.

According to Ms. Matthews, she had witnessed no bond between Mother and G.A., Mother had demonstrated an inability to provide a stable, safe living environment for G.A., and Mother had a lifestyle that would ultimately expose G.A. to dangerous situations.

Ms. Matthews further testified that G.A.'s foster parents had developed a bond with G.A.; that they were able to meet G.A.'s emotional, physical, educational, medical, and financial needs; and that they made sure G.A. went to all of her medical appointments.

Ms. Matthews testified that it was in the G.A.'s best interests for the parental rights of Mother and the unknown father to be terminated.

**B. Report from Attorney Ad Litem for G.A.**

The attorney ad litem for G.A. offered her report as a trial exhibit. The report detailed the ad litem's meetings with G.A. and the foster parents. The report stated that G.A. thrived in the foster home, was sleeping better, trying solid foods, pulling herself up, and attempting to take steps and say words. The report noted that the foster parents demonstrated that G.A.'s care and well-being is their priority, and that G.A. is attached to the foster parents and the foster parents are attached to G.A. The report concluded that it is in G.A.'s best interest to

4

have Mother's parental rights terminated and to allow the foster parents to be permitted to pursue adoption.

### C. No Documentary Evidence or Testimony from Mother

Mother presented no documentary evidence or testimony at the trial.

### D. Trial Court's Disposition

After hearing testimony and reviewing the evidence admitted at trial, the trial court found by clear and convincing evidence that Mother's and the unknown father's paternal rights should be terminated. The trial court found by clear and convincing evidence that Mother constructively abandoned G.A. (and that Mother caused G.A. to be born addicted to a controlled substance), and that termination was in the best interest of G.A.

### III. BURDEN OF PROOF AND STANDARDS OF REVIEW

In a termination case, the State seeks not just to limit parental rights but to erase them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except the child's right to inherit. Tex. Fam. Code Ann. § 161.206(b) (West Supp. 2017); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, "[w]hen the State seeks to sever permanently the relationship between a parent and a child, it must first observe fundamentally fair procedures." *In re E.R.,* 385 S.W.3d 552, 554 (Tex. 2012) (citing *Santosky v. Kramer*, 455 U.S. 745, 747–48, 102 S. Ct. 1388, 1391– 92 (1982)). We strictly scrutinize termination proceedings and strictly construe

5

involuntary termination statutes in favor of the parent. *In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012); *E.R.*, 385 S.W.3d at 554–55; *Holick*, 685 S.W.2d at 20–21.

For a trial court to terminate a parent-child relationship, the Department must establish by clear and convincing evidence that the parent's actions satisfy one ground listed in family code section 161.001(b)(1) and that termination is in the best interest of the child. Tex. Fam. Code Ann. §§ 161.001(b), 161.206(a); *E.N.C.*, 384 S.W.3d at 802; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re C.D.E.*, 391 S.W.3d 287, 295 (Tex. App.—Fort Worth 2012, no pet.).

In reviewing the legal sufficiency of the evidence in a termination case, we consider all the evidence in the light most favorable to the finding to determine whether a reasonable fact finder could have formed a firm belief or conviction that its finding was true. *See In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009); *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). We assume the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so, and we disregard all evidence a reasonable fact finder could have disbelieved. *J.O.A.*, 283 S.W.3d at 344; *J.F.C.*, 96 S.W.3d at 266.

In reviewing the factual sufficiency of the evidence, we consider and weigh all of the evidence, including disputed or conflicting evidence. *J.O.A.*, 283

6

S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* We give due deference to the fact finder's findings and we cannot substitute our own judgment for that of the fact finder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The fact finder is the sole arbiter when assessing the credibility and demeanor of witnesses. *Id.* at 109.

## IV. EVIDENCE IS LEGALLY AND FACTUALLY SUFFICIENT TO SUPPORT FINDING OF CONSTRUCTIVE ABANDONMENT

### A. The Law Concerning Constructive Abandonment

The Texas Family Code provides for termination of parental rights on the ground of constructive abandonment when the child has been in the permanent or temporary managing conservatorship of an authorized agency for not less than six months, and (1) the department or authorized agency has made reasonable efforts to return the child to the parent; (2) the parent has not regularly visited or maintained significant contact with the child; and (3) the parent has demonstrated an inability to provide the child with a safe environment. Tex. Fam. Code Ann. § 161.001(b)(1)(N); *In re K.M.B.*, 91 S.W.3d 18, 25 (Tex. App.—Fort Worth 2002, no pet.).

Concerning the first statutory element of constructive abandonment under section 161.001(b)(1)(N), the implementation of a family service plan by the

Department is considered a reasonable effort to return a child to its parent if the parent has been given a reasonable opportunity to comply with the terms of the plan. *See In re G.P.*, 503 S.W.3d 531, 533 (Tex. App.—Waco 2016, pet. denied) (holding evidence that the Department prepared and administered service plan indicated return of child was possible if mother complied with plan and therefore constituted legally and factually sufficient evidence that Department made reasonable efforts to return child); *see also In re A.Q.W.*, 395 S.W.3d 285, 289 (Tex. App.—San Antonio 2013, no pet.); *In re K.M.B.*, 91 S.W.3d at 25.

## B. Analysis

Mother does not challenge that G.A. has been in the permanent or temporary managing conservatorship of an authorized agency for at least six months. Nor does Mother challenge the trial court's finding that she has not regularly visited or maintained significant contact with the child, or that she demonstrated an inability to provide G.A. with a safe environment. Instead, Mother's sufficiency challenge to the trial court's finding of constructive abandonment as a ground for terminating her parental rights to G.A. is limited to the first element of section 161.001(b)(1)(N)—that the evidence was legally and factually insufficient to establish that the Department made reasonable efforts to return G.A. to Mother.

Mother first asserts that the evidence is insufficient to establish this element of constructive abandonment because the Department provided only one service plan for her. Matthews testified that the Department created a

8

service plan for Mother with the goal of reuniting Mother and G.A., but that after two weeks, Mother ran away and either did not respond to Matthews's communications or would not disclose where she was to Matthews and that, consequently, Mother did not see G.A. again. Mother cites no authority, and we have located none, for the proposition that the Department is required to create multiple service plans to show reasonable efforts to return G.A. to Mother. Indeed, "The State's preparation and administration of *a* service plan for the parent constitutes evidence that the State made reasonable efforts to return the child to the parent." *In Interest of M.R.J.M.*, 280 S.W.3d 494, 505 (Tex. App.—Fort Worth 2009, no pet.) (op. on reh'g) (emphasis added).

Mother next claims that no evidence exists that she understood her service plan, that the Department tried to provide her access to classes and services included in her service plan, that she expressed an unwillingness to complete services, or that she rejected working services, and that this lack of evidence makes the trial court's finding that the Department made reasonable efforts to return G.A. to her supported by legally and factually insufficient evidence. But at trial, Matthews affirmed that she explained the service plan to Mother and that the service plan required that Mother attend parenting classes, attend counseling, maintain visitation and a relationship with G.A., remain in contact with Matthews, and remain in the Department's care without running away. Matthews provided undisputed testimony that Mother ran away from the Department's care only a few weeks after the service plan was provided to

9

Mother, that Mother never returned to care, and that Mother stated she would not return to the Department's care. From this undisputed evidence, a reasonable fact finder could form a firm conviction or belief that Mother did not understand her service plan and did not have access to classes and services because she ran away—not because the Department failed to explain the service plan and provide access to classes and services. Contrary to Mother's contentions, this lack of evidence pointed to by Mother does not show that the Department did not make reasonable efforts to return G.A. to Mother, but instead shows that Mother did not make reasonable efforts to obtain her return as outlined in her service plan. A reasonable factfinder could form a firm conviction or belief that Mother's running away did constitute an unwillingness to complete the service plan as well as a rejection of the services offered in the plan.

Mother finally contends that she tried to see G.A., but that the Department prevented her from doing so because the Department's service plan required her to live in a shelter. Matthews testified that Mother was required to live at a shelter because she had no safe environment to live in and needed to be living in a safe environment in order to be reunified with G.A. At the time of the trial, Mother had gone eleven consecutive months without seeing G.A. Matthews repeatedly communicated with Mother via texts, emails, and phone calls encouraging Mother to return to care and to visit G.A., but to no avail. Mother told Matthews that, while she did not want G.A. to be adopted, she did not want G.A. because she was not ready to be a parent.

10

Viewing all of the evidence in the light most favorable to the trial court's finding that the Department made reasonable efforts to return G.A. to Mother, resolving all disputed facts in favor of this finding if a reasonable factfinder could do so, and disregarding all evidence a reasonable factfinder could have disbelieved, we hold that a reasonable factfinder could have formed a firm belief or conviction that the finding that the Department made reasonable efforts to return G.A. to Mother was true. *J.O.A.,* 283 S.W.3d at 344; *J.F.C.*, 96 S.W.3d at 266. Accordingly, we hold that the evidence is legally sufficient to support the trial court's finding that Mother constructively abandoned G.A. *See, e.g.*, *G.P.*, 503 S.W.3d at 533; *K.M.B.*, 91 S.W.3d at 25.

Further, giving due deference to the trial court's credibility determinations and considering and weighing all of the evidence—including any disputed or conflicting evidence—in light of the entire record, any disputed evidence that a reasonable fact finder could not have credited in favor of the finding that the Department made reasonable efforts to return G.A. to Mother is not so significant that a fact finder could not reasonably have formed a firm belief or conviction that the Department made reasonable efforts to return G.A. to Mother. *See J.O.A.*, 283 S.W.3d at 345; *H.R.M.*, 209 S.W.3d at 105. Accordingly, we hold that the evidence is factually sufficient to support the trial court's finding that Mother constructively abandoned G.A. *See, e.g.*, *G.P.*, 503 S.W.3d at 533; *K.M.B.*, 91 S.W.3d at 25.

11

We overrule Mother's first issue[4]

## V. EVIDENCE IS LEGALLY AND FACTUALLY SUFFICIENT TO SUPPORT BEST-INTEREST FINDING

### A. The Law Concerning Best Interest

There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). We review the entire record to determine the child's best interest. *In re E.C.R.*, 402 S.W.3d 239, 250 (Tex. 2013). The same evidence may be probative of both the ground alleged for termination and the required best-interest finding. *Id.* at 249; *C.H.*, 89 S.W.3d at 28. Nonexclusive factors that the trier of fact in a termination case may also use in determining the best interest of the child include

- (A) the desires of the child;

- (B) the emotional and physical needs of the child now and in the future;

- (C) the emotional and physical danger to the child now and in the future;

- (D) the parental abilities of the individuals seeking custody;

- (E) the programs available to assist these individuals to promote the best interest of the child;

---

[4]Because, along with a best-interest finding, a finding of only one ground alleged under section 161.001(b)(1) is necessary to support a judgment of termination, we need not address Mother's second issue challenging the trial court's finding under subsection (R) of section 161.001(b)(1). *See* Tex. R. App. P.47.1; *see also In re E.M.N.*, 221 S.W.3d 815, 821 (Tex. App.—Fort Worth 2007, no pet.); *In re S.B.*, 207 S.W.3d 877, 886 (Tex. App.—Fort Worth 2006, no pet.).

12

(F)     the plans for the child by these individuals or by the agency seeking custody;

(G)     the stability of the home or proposed placement;

(H)     the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(I)     any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (citations omitted); *see E.C.R.*, 402 S.W.3d at 249 (stating that in reviewing a best-interest finding, "we consider, among other evidence, the *Holley* factors"); *E.N.C.*, 384 S.W.3d at 807. These factors are not exhaustive, and some listed factors may be inapplicable to some cases. *C.H.*, 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child. *Id.* On the other hand, the presence of scant evidence relevant to each factor will not support such a finding. *Id.*

**B.  Analysis of Sufficiency of the Evidence**

Because Matthews was the only witness to testify at trial, and because her testimony is set forth extensively above, our analysis of the *Holley* factors is necessarily abbreviated. Regarding G.A.'s desires, G.A. was approximately eleven months old at the time of trial. G.A. had been with the same foster parents since August 2016. Matthews testified that G.A. had bonded with the foster parents, and that the foster parents had demonstrated an ability to meet G.A.'s physical, emotional, educational, medical, and financial needs. The foster

13

parents had paid for corrective surgery to address G.A.'s low lip and tongue tie and had ensured that G.A. attended all appointments and treatments for a condition called torticollis. *See In re S.R.*, 452 S.W.3d 351, 369 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) ("When children are too young to express their desires, the factfinder may consider whether the children have bonded with the foster family, are well-cared for by them, and have spent minimal time with a parent."); *In re L.G.R.*, 498 S.W.3d 195, 205 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) ("The stability of the proposed home environment is an important consideration in determining whether termination of parental rights is in the child's best interest . . . evidence about the present and future placement of the Child is relevant to the factfinder's best-interest determination."). Therefore, the trial court was entitled to find this factor weighed in favor of termination of Mother's parental rights to G.A.

Regarding the emotional and physical needs of G.A. and emotional and physical danger to G.A. now and in the future, the record reflects that Mother's family refused to provide for Mother, and Matthews also testified that Mother "hasn't made any efforts to put [G.A.] above [Mother's] own needs by returning to care." Further, Ms. Matthews testified that she was concerned that G.A. would be subjected to dangerous situations due to Mother's unstable living arrangements and history of prostitution. *In re D.W.*, 445 S.W.3d 913, 926 (Tex. App.—Dallas 2014, no pet.) (affirming the importance of stability and permanence in considering a child's present and future physical and emotional

14

needs). Therefore, the trial court was entitled to find these two factors weighed in favor of termination of Mother's parental rights to G.A.

Regarding the parental abilities of Mother and programs available to assist her in promoting G.A.'s best interest, Mother failed to demonstrate any parenting abilities; G.A. was placed in foster care within approximately three weeks of birth. And although Mother was provided with a service plan and given the opportunity to visit G.A., and to demonstrate parenting abilities, to access services to promote G.A.'s best interests, she did not do so. Matthews said that she was willing to work with Mother to help Mother be reunited with G.A. and to participate in programs designed to assist young Mothers but that Mother refused. *See In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.) (a parent's failure to comply with service plan may affect the factfinder's consideration of the child's best interest). Therefore, the trial court was entitled to find these two factors weighed in favor of termination of Mother's parental rights to G.A.

Regarding the plan for G.A. and the stability of the home or proposed placement, Mother indicated that she did not want G.A. because she was not ready to be a mother nor was Mother living in a safe, stable, environment. The Department's plan for G.A. was to permit the foster family to adopt her. The foster family was bonded with G.A., and G.A. was bonded with them. The foster family had met G.A.'s physical and emotional needs, including financing necessary medical procedures for G.A. Therefore, the trial court was entitled to

find that these two factors weighed in favor of termination of Mother's parental rights to G.A.

Regarding any acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate, the evidence established that Mother had not seen G.A. in eleven months, that Mother was not living in a safe, stable environment, that Mother refused to put G.A.'s needs above her own, and that Mother had not demonstrated a bond or concern for G.A. Therefore, the trial court was entitled to find this factor weighed in favor of termination of Mother's parental rights to G.A.

Regarding any excuse for her acts or omissions, Mother argues that she was only fifteen at the time she came into the Department's care and only sixteen at the time of trial. The fact that Mother is still a minor herself and that the Department was involved in her care as well as G.A.'s care, however, does not excuse her from working the Department's service plan designed to reunite her and G.A. The trial court was entitled to find that this factor weighed in favor of terminating Mother's parental rights to G.A.

Considering the non-exclusive *Holley* factors, viewing all evidence in the light most favorable to the trial court's best-interest finding, resolving all disputed facts in favor of this finding if a reasonable factfinder could do so, and disregarding all evidence a reasonable factfinder could have disbelieved, we hold that a reasonable factfinder could have formed a firm belief or conviction that terminating Mother's parental rights was in G.A.'s best interest. *See* Tex. Fam.

16

Code Ann. § 161.001(b)(2); *J.O.A.*, 283 S.W.3d at 345. Accordingly, we hold that the evidence is legally sufficient to support the trial court's best-interest finding.

Giving due deference to the trial court's credibility determinations and considering and weighing all of the evidence—including any disputed or conflicting evidence—in light of the entire record, any disputed evidence that a reasonable fact finder could not have credited in favor of the finding that the termination of Mother's parental rights was in G.A.'s best interest is not so significant that a fact finder could not reasonably have formed a firm belief or conviction that terminating Mother's parental rights was not in G.A.'s best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(2); *J.O.A.*, 283 S.W.3d at 345. Accordingly, we hold that the evidence is factually sufficient to support the trial court's finding that termination of Mother's parental rights is in the best interest of G.A. We overrule Mother's third issue.

## VI. CONCLUSION

Having overruled Mother's dispositive issues on appeal, we affirm the trial court's judgment terminating Mother's parental rights to G.A.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL: SUDDERTH, C.J.; WALKER and GABRIEL, JJ.

DELIVERED: December 28, 2017

17