**AFFIRMED; Opinion Filed October 8, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-15-00501-CV**

## IN THE INTEREST OF A.H.J., A.H., AND A.H., CHILDREN

**On Appeal from the County Court At Law No. 1
Kaufman County, Texas
Trial Court Cause No. 87976CC**

## MEMORANDUM OPINION
Before Justices Fillmore, Myers, and Evans
Opinion by Justice Evans

After a jury trial, the mother of three children appeals the trial court's final order terminating her parental rights. In thirteen issues, appellant challenges the legal and factual sufficiency of the evidence supporting the jury's best interest finding, and asserts the trial court erred in (1) denying her motion to dismiss the case pursuant to Texas Family Code section 263.402; (2) granting the motion for a "nunc pro tunc" permanency hearing order; (3) denying her motion for new trial; (4) admitting certain evidence at trial; (5) denying her request for a spoliation instruction; (5) refusing her request to review a witness's notes; (6) enforcing the mediated settlement agreement and requiring the filing of her affidavit of relinquishment, and (7) ordering her to pay Kaufman County court-appointed attorney's fees. For the reasons that follow, we conclude the issues raised by appellant do not present any reversible error. Accordingly, we affirm the trial court's order of termination.

Appellant is the mother of three children, Oldest Child, Middle Child, and Youngest Child. The Texas Department of Family and Protective Services became involved with the family in March 2013, shortly after appellant gave birth to Youngest Child and appellant and Youngest Child tested positive for methamphetamine. Youngest Child was removed by the Department directly from the hospital.[1] The Department had some difficulty locating the remaining two children (ages three and one at the time) and ultimately found them living with appellant in what appellant called a "dope house" that did not have electricity.[2] According to Department caseworker Mayrani Velazquez, Oldest Child and Middle Child also tested positive for amphetamines and methamphetamines when they came into the Department's care.

After a hearing, a family service plan was developed that required appellant to complete a drug treatment program, submit to drug testing, attend parenting classes, and undergo counseling, among other things. The case proceeded in due course and in December 2013, the trial court granted a 180-day extension pursuant to section 263.401(b) of the family code resetting the dismissal date for October 6, 2014. In September 2014, the parties signed a Mediated Settlement Agreement (MSA) providing for a three-phase possession plan culminating in appellant having the right to unsupervised possession of the children at all times beginning November 24, 2014. The MSA also required appellant to execute an affidavit of relinquishment to be held by her attorney and not filed unless appellant failed to comply with the terms of the MSA.

At a permanency hearing on October 2, 2014 the trial court stated on the record that it was in the best interests of the children to approve the MSA and ordered a monitored return to

---

[1] Youngest child was born in the bathtub of a hotel room and taken to the hospital after the birth.

[2] The children's father was arrested shortly after Youngest Child's birth and was incarcerated at the time of trial. He executed a voluntary affidavit of relinquishment while the case was pending and is not a party to the appeal.

the mother in accordance with the MSA's possession plan. On the record, the trial court set the next permanency hearing for December 4, 2014, scheduled a final hearing for March 5, 2015, and reset the dismissal date for March 31, 2015. On October 16, 2014, the trial court signed an order with respect to the October 2 hearing. During the implementation of the second phase of the MSA's possession plan, the Department became concerned about some scratching and bruising injuries Oldest Child and Middle Child sustained while in appellant's care and did not proceed with the monitored return. At the December permanency hearing, the children were continued in their current foster placement. The Department then filed a motion to enforce the MSA and compel appellant to file her executed affidavit of relinquishment with the trial court. Appellant moved to dismiss the case arguing the lack of compliance with the statutory requirements of section 263.403 of the family code precluded the trial court from retaining jurisdiction over the case after October 6, 2014 dismissal date.[3] After a hearing, the trial court denied appellant's motion and granted the Department's motion. The matter proceeded to trial before a jury on March 16, 2015. In accordance with the jury's verdict, the trial court rendered an order terminating appellant's parental rights to her three children. This appeal followed.

## ANALYSIS

A.    Motion To Dismiss Pursuant To Section 263.402

In her first issue, appellant complains the trial court abused its discretion when it denied her motion to dismiss pursuant to section 263.402 of the family code. Specifically, she argues that the trial court's retention of the case on the docket after the October 6 dismissal date was error because the trial court did not comply with the statutory requirements of a monitored return under section 263.403.

---

[3] This Court denied appellant's petition for writ of mandamus with respect to the trial court's ruling on her motion to dismiss pursuant to section 263.401 of the family code. Appellant filed a petition for writ of mandamus with the Texas Supreme Court which was also denied.

In relevant part, section 263.401 of the family code provides that a Department's lawsuit requesting termination of parental rights must be dismissed on the first Monday after the first anniversary of the date the court rendered the first temporary order naming the Department as temporary managing conservator unless the court has commenced a trial on the merits or granted a one-time extension under subsection (b). TEX. FAM. CODE ANN. § 263.401 (West 2014). Notwithstanding section 263.401, however, the court may retain jurisdiction of a case if it finds that the retention is in the best interest of the child, orders a Department-monitored return of the child to the parent, and continues the Department as temporary managing conservator of the child. TEX. FAM. CODE ANN. § 263.403(a) (West 2014).

In the case before us, the original dismissal date was extended to October 6, 2014 pursuant to section 263.401(b). However, on October 2, 2014, the trial court approved the parties' MSA and ordered a monitored return to appellant in accordance with the MSA's stair-step process. Appellant contends the trial court's October 2 oral pronouncement was ineffective to retain jurisdiction over the matter pursuant to section 263.403 because the trial court did not use any "extension language" or make the findings required by section 263.403. We disagree.

We first note that in accordance with family code section 101.026, "render" means the pronouncement by the judge of the court's ruling on a matter. TEX. FAM. CODE ANN. § 101.026 (West 2014). The pronouncement may be made orally in the presence of the court reporter or in writing, including on the court's docket sheet, or by a separate written instrument. *Id*. Moreover, nothing in section 263.403 requires the trial court's monitored return order to be in writing. *See* TEX. FAM. CODE ANN. § 263.403.

At the October 2 hearing, the trial court stated on the record that it was in the best interest of the children to approve the MSA. The trial court "order[ed] a monitored return to the [M]other. But that is with the understanding that that will be a stair-step process . . . ." The

–4–

judge then admonished appellant that, "This is not the end. . . . If for some reason that doesn't work out, then unfortunately, we'll be back here. It would be putting the return in danger and that may not occur." The trial court went on to state on the record, "The permanency hearing in this matter is scheduled for December the 4th at nine o'clock, followed by a . . . new final hearing on March 5th of 2015 at nine o'clock. And the new dismissal date is March 31st of 2015."

Based on the record before us, we conclude the trial court ordered a monitored return on October 2 that was in accordance with the parties' MSA. We further conclude that although the trial court may not have specifically stated on the record that it was retaining the case on the docket, the judge's admonishment to appellant together with the setting of dates for the next permanency hearing, new final hearing, and new dismissal date clearly reflect the trial court's retention of the case on its docket.

Appellant also asserts that the trial court's October 16 written order retaining the case on the docket pursuant to section 263.401(b) controls over the trial court's conflicting oral pronouncements on the record. We need not address this argument however, because on April 2, 2015, the trial court signed a "Nunc Pro Tunc Permanency Hearing Order" with respect to the October 16 order. The April 2 order retained the case on the docket pursuant to section 263.403. We note that appellant challenges the validity of trial court's nunc pro tunc order in her second issue. As discussed in our analysis of appellant's second issue, however, because we determine the April 2 order is valid and supersedes the October 16 order, her argument based on the superseded October 16 order presents nothing for our review.

Finally, we are not persuaded by appellant's argument that the trial court's failure to make specific findings regarding the necessity for retaining the case nullifies the trial court's monitored return order. The trial court stated on the record its finding that approval of the

parties' MSA was in the best interests of the children. That agreement provided for the monitored return of the children to appellant in accordance with a three-phase possession plan. In reaching our conclusion, we necessarily reject appellant's argument that any pronouncement failing to comply with every statutory requirement is insufficient to retain the case on the docket. Appellant relies on *In re J.H.G.,* 290 S.W.3d 400 (Tex. App.—Dallas, 2009), *rev'd*, 302 S.W.3d 304 (Tex. 2010) to support her position. As noted by the supreme court in *J.H.G.*, however, a 263.401(a) dismissal date is procedural and not jurisdictional. 302 S.W.3d at 306. Moreover, *J.H.G.* involved an extension under a former version of section 263.401(b) which specifically provided the trial court could not retain the suit beyond the one-year dismissal date unless the trial court found extraordinary circumstances. 290 S.W.3d at 403–04. The former statute explicitly stated that if the trial court failed to make specific findings of extraordinary circumstances, it must dismiss the suit. *Id.* While certain findings are required by section 263.403, unlike the former section 263.401(b) at issue in *J.H.G.*, there is nothing in section 263.403 suggesting the failure to make such findings would preclude retention of the case on the docket.

We conclude the trial court's October 2 oral rendition was sufficient to maintain the case on its docket pursuant to section 263.403 and was timely rendered before the October 6 dismissal date. Accordingly, the trial court did not err in denying appellant's motion to dismiss. We resolve appellant's first issue against her.

B.      Motion For Nunc Pro Tunc Order

In her second issue, appellant asserts the trial court abused its discretion in granting the Department's motion for a nunc pro tunc order with respect to the October 2 permanency hearing. She contends the April 2 nunc pro tunc order did not correct clerical errors, contained a

completely new set of findings that conflicted with those in the October 16 order, and was barred by the equitable principles of waiver, estoppel, and laches.

Once the trial court has lost plenary jurisdiction, a nunc pro tunc order may be entered to correct clerical errors. *See Andrews v. Koch*, 702 S.W.2d 584, 585 (Tex. 1986). However, because the April 2 order was signed on the same date as the trial court's order of termination, it is beyond dispute that the trial court had plenary power to correct, amend, or clarify its interlocutory orders in the case. *See Fruehauf Corp. v. Carrillo,* 848 S.W.2d 83, 84 (Tex. 1993). Consequently, the trial court was not limited to correcting clerical error and clearly retained the power to correct the October 16 order. It is the content of the order rather than its label that controls our analysis. *See Johnson v. State Farm Lloyds*, 204 S.W.3d 897, 899 n.1 (Tex. App.— Dallas 2006), *aff'd,* 290 S.W.3d 886 (Tex. 2009) (court must read pleading for its content rather than its label).

Appellant further argues the trial court should have denied the Department's motion based on equitable principles because the case was tried with the October 16 order in place.[4] Appellant contends that had the corrected order been signed before trial, she could have limited the evidence relative to the best interest analysis to facts occurring after October 16. The only legal authority she cites to support her position, however, is *C.B. v. Texas Department of Family and Protective Services*, 440 S.W.3d 756 (Tex. App.—El Paso 2013, no pet.). After considering the unique circumstances at issue in *C.B.*, we conclude it is not persuasive authority here. In *C.B.,* the jury was instructed that the parties' mediated settlement agreement was a judicial admission that conclusively established that as of the date of agreement, it was in the best interests of the children to be returned to their mother. *Id.* at 765. The El Paso court observed that based on the unobjected-to instruction, the jury was directed to focus on the mother's

---

[4] Our review of the record reveals the October 16 order was not before the jury.

behavior between the date the children were returned to her and the date of re-removal. *Id*. at 766. The El Paso court specifically refused to address the propriety of the instruction as that issue was not before them. Moreover, we agree with the Austin Court of Appeals that precluding consideration of a parent's actions during the pendency of a termination once a monitored return is ordered would discourage the Department and the courts from attempting family reunifications in close cases. *See J.C.C. v. Tex. Dept. of Family & Protective Servs.*, No. 03-13-008450-CV, 2014 WL 2740373 at *4 (Tex. App.—Austin June 13, 2014, no pet.) (mem. op.) (refusing to adopt *C.B.'s* analysis).

Here, the MSA providing for the stair-step monitored return to appellant was before the jury and specifically stated the agreement was in the best interests of the children. Moreover, our review of the record reveals that witnesses for the Department testified the real focus of the case was what happened after October 2014. The caseworker testified that at the time the MSA was reached, the Department agreed it was in the best interests of the children. The Court Appointed Special Advocate for the children also indicated that the case boiled down to what happened between October through December 2014. Accordingly, we are not persuaded that equitable principles required the trial court to deny the Department's motion.

In two additional arguments appellant contends the nunc pro tunc order was insufficient to retain the case on the docket and is against public policy because it was basically an attempt to back date findings that never happened and retroactively cure the October 2 oral rendition. We need not address these arguments having already concluded the trial court's October 2 oral rendition was sufficient to retain the case on the docket pursuant to section 263.403. Because we determine the trial court did not abuse its discretion in granting the Department's motion to correct the October 16 order, we resolve appellant's second issue against her.

C.      Motion For New Trial

In her third issue, appellant challenges the trial court's denial of her motion for new trial. She argues the October 16 interlocutory order constituted comments by the trial court on the weight of the evidence and permitted incurable jury argument on her ability to care for her children.[5] We review the denial of a motion for new trial for an abuse of discretion. *See Hodges v. Rajpal*, 459 S.W.3d 237, 250 (Tex. App.—Dallas 2015, no pet.). A trial court abuses its discretion when its actions are arbitrary or unreasonable or when it acts without reference to any guiding rules or principles. *Id*.

Appellant specifically complains about the finding in the October 16 order that she was not willing or able to provide the children with a safe environment and placement with her was not in their best interests. We first note that the October 16 order was not in evidence before the jury. Instead, the only permanency hearing order in evidence was signed on January 15, 2015 and related to the December 2014 permanency hearing. The January 15 order also contained findings that appellant was unable or unwilling to provide the children with a safe environment and therefore return of the children to her was not in their best interests. Contrary to appellant's assertion, however, there is no indication that these findings were incorporated from the October 16 order. Instead, it appears that these findings were based on the December hearing. Because there is no indication the October 16 order findings were before the jury, or that the Department specifically relied on those findings at trial, we conclude that the trial court did not abuse its

---

[5] Appellant further argues that because the April 2 order was signed after the trial, she was deprived of the opportunity to rely on its findings that she was able to care for the children at least as of October 16. Because appellant did not assert this argument in her motion for new trial, she did not preserve this complaint for appeal. *See* TEX. R. APP. P. 33.1. Moreover, to the extent appellant again relies on *C.B.* to support this position, we have already concluded *C.B.* is factually distinguishable from the case here. Unlike the order in *C.B.* which made a specific finding as to the children's best interest as of the date of the order, the April 2 order specifically found that until Phase 3 of the MSA was reached, the children continued to need substitute care and should be continued in their current foster placement. Consequently, the finding that placement with appellant was in the children's best interest must be read in conjunction with this finding. As such, appellant's reliance on *C.B.* is misplaced.

discretion in denying appellant's motion for new trial. We resolve appellant's third issue against her.

## D.    Evidentiary Challenges

In her fourth, sixth, ninth, and eleventh issues, appellant complains about the admission of certain evidence. We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *See In re J.F.C.*, 96 S.W.3d 256, 285 (Tex. 2002). However, even if we conclude the trial court erred in admitting the evidence, we may not reverse the trial court's order unless we conclude the evidentiary error was reasonably calculated to cause and probably did cause rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a)(1); *In re E.A.K.*, 192 S.W.3d 133, 148 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).

### i. Admission of drug test results

In her fourth issue, appellant asserts the trial court erred in admitting various documents containing references to positive drug test results on her and the children without first establishing the proper predicate for the scientific evidence and in violation of the hearsay rule. At trial, both appellant and the children's father testified without objection to using drugs and indicated they did not doubt the results of the drug tests. Father admitted using drugs in the presence of the Oldest Child and Middle Child. Appellant admitted to living in a "dope house" with the Oldest Child and Middle Child. Appellant also admitted to using drugs while she was pregnant with Youngest Child. On cross-examination, appellant indicated she did not doubt the children were exposed to and had methamphetamine in their bodies. Further, appellant and Father took responsibility for the children's exposure to drugs. Consequently, even if the trial court abused its discretion in admitting evidence of the drug test results on her and the children, we cannot conclude appellant was harmed by the error in light of the other unobjected-to

–10–

evidence that appellant and father exposed the children to drugs. We resolve appellant's fourth issue against her.

ii. Admission of transcript testimony of unavailable witness

In her sixth issue, appellant complains about the admission of transcript testimony of Ben Smith with whom she had a relationship during the pendency of this case. Smith testified at a permanency hearing in June 2014. Specifically, appellant argues the Department did not meet its burden of showing Smith was an unavailable witness.

Former testimony of an unavailable witness is admissible as an exception to the hearsay rule if (1) the witness is absent from trial and the witness's proponent has not been able, by process or other reasonable means, to procure his attendance, and (2) the former testimony was from a hearing in the current case and now offered against a party that had an opportunity to cross-examine the witness. TEX. R. EVID. 804(a)(5), (b)(1). The transcript testimony at issue was from a permanency hearing at which appellant's attorney cross-examined Smith. Consequently, appellant does not challenge the second prong noted above.

With respect to the first prong, a witness is unavailable when: (1) the witness is dead, has become insane or is physically unable to testify, (2) the witness is beyond the jurisdiction of the court, (3) the witness's whereabouts remain unknown after a diligent search, or (4) the witness has been kept away from trial by the adverse party. *Hall v. White*, 525 S.W.2d 860, 862 (Tex. 1975). A witness is not unavailable unless a good faith effort has been to obtain the witness's presence at trial. *See Otero-Miranda v. State*, 746 S.W.2d 352, 354 (Tex. App.—Amarillo 1988, pet. ref'd, untimely filed).

The Department produced evidence that Smith was working in Colorado and had been faxed a copy of a subpoena the Tuesday before trial. An investigator for the Kaufman County district attorney's office testified that he received a subpoena for Smith within the previous two

weeks. He made contact with Smith by telephone and informed him he had a subpoena for his appearance. Smith indicated he was in Colorado managing a construction project. The investigator asked, and Smith agreed, to accept the subpoena by fax. When the investigator called to confirm Smith's receipt of the subpoena, Smith indicated that he was coming and that if he completed a certain percentage of the project, his company would fly him back to Texas. According to the witness, although Smith was supposed to call on the Saturday before trial, he did not. Ultimately, Smith did not appear for trial.

The evidence shows that at least one week before trial, Smith was employed in Colorado, outside the jurisdiction of the court, as a construction manager. Smith received a subpoena by fax and had agreed to testify. By the time the Department discovered Smith did not appear, however, there was no reasonable means to procure his attendance or his testimony without delaying the trial. Based on the evidence presented, we cannot conclude the trial court abused its discretion in concluding the Department met its burden of showing that even though Smith was beyond the jurisdiction of the court, the Department made a good faith effort to procure his attendance at trial. We resolve appellant's sixth issue against her.

iii. Admission of the testimony of Father's mother

In her ninth issue, appellant contends the trial court abused its discretion in allowing Father's mother to testify in violation of rule 614 of the rules of evidence, commonly referred to as "the Rule." We disagree.

Father was called by the Department to testify.[6] He testified that he was largely responsible for the Department's involvement with the family. After Father completed his testimony, the Department called his mother as a rebuttal witness to refute Father's testimony. The Department argued that although it had not anticipated calling her, it was necessary to refute

---

[6] Father appeared pursuant to a bench warrant.

–12–

Father's perjurous testimony. Appellant objected that Father's mother was in the courtroom after the Rule had been invoked and had heard Father's testimony.

Texas Rule of Evidence 614 provides for the exclusion of witnesses in the courtroom during the testimony of other witnesses. *See* TEX. R. EVID. 614. The rule's purpose is to prevent collusion among witnesses testifying for the same side and to minimize the tailoring of testimony in response to the testimony of other witnesses. *See In re K.M.B.,* 91 S.W.3d 18, 28 (Tex. App.—Fort Worth 2002, no pet.). If the Rule is violated, however, depending on the circumstances, the trial court may allow the testimony, exclude the testimony, or hold the violator in contempt. *See id.* We review the trial court's ruling under an abuse of discretion standard. *Id.* Even assuming the failure to exclude the witness was erroneous, it is not reversible unless it is shown to be harmful. *See In re H.M.S.*, 349 S.W.3d 250, 253 (Tex. App.—Dallas 2011, pet. denied).

Appellant argues that she was harmed by the testimony of Father's mother because it gave the jury the false impression that she "planned for [Father] to give false testimony." But there is nothing in the record to suggest appellant procured or had any knowledge of Father's testimony. Moreover, appellant has not shown how the violation of the Rule affected her mother-in-law's testimony in any way. There is no indication of collusion between Father and his mother or that the objected-to testimony was tailored or altered by her hearing Father's testimony. In essence, the testimony of Father's mother was used to show that Father had lied to the Department so that they would bring him to court to testify where he could see appellant. Absent a showing of harm resulting from the violation of rule 614, we conclude the trial court's refusal to exclude the testimony was not reversible. We resolve appellant's ninth issue against her.

–13–

iv. Admission of trial court's March 12, 2015 order

In her eleventh issue, appellant complains about the trial court's admission of its March 12, 2015 order granting the Department's motion to enforce the MSA and ordering her to file her affidavit of voluntary relinquishment with the court. Appellant argues admission of the order violates rule of evidence 605 because it constitutes a comment by the court on the weight of the evidence indicating she violated the MSA.

Rule 605 provides in relevant part, "The presiding judge may not testify as a witness at the trial." TEX. R. EVID. 605. The question is whether the contents of the judge's order is essential to the exercise of some judicial function or the functional equivalent of witness testimony. *See In re C.C.K.*, No. 02-12-00347-CV, 2013 WL 452163 at *33 (Tex. App.—Fort Worth February 7, 2013, no pet.) (mem. op).

We first note that the order in question contains no express findings or statements that conveyed factual information not in evidence. Rather, the order merely grants the Department's motion to enforce the MSA and requires appellant to file her affidavit of relinquishment. Admission of an order as evidence that appellant failed to comply with the MSA is not in itself inappropriate. *See In re M.S.*, 115 S.W.3d 534, 538 (Tex. 2003) (admission of order as evidence of failure to comply with orders). Moreover, appellant did not object to the admission of the order from the December 2014 permanency hearing which contained express trial court findings that appellant was unable or unwilling to provide the children with a safe environment and the permanency goal for the children was adoption, thus suggesting that appellant had not complied with the MSA. Because any arguably implied findings in the March 12 order were merely cumulative of other similar evidence that has not been challenged, appellant has not established that she was harmed by the admission of the March 12 order. *See M.S.*, 115 S.W.3d at 542. We resolve appellant's eleventh issue against her.

E. Spoliation Instruction

In issue five, appellant asserts she was entitled to a spoliation instruction based on the Department's failure to preserve all but five of the video recordings of her visits with the children. We disagree.

Although the Department video recorded over forty visits appellant had with her children, the Department preserved and produced only five of the video recordings in response to appellant's discovery requests. As a result, appellant requested a jury instruction that any video of her visits with the children that were not preserved should be presumed favorable to her. The Department objected, arguing such an instruction would be highly prejudicial and that it did not have the ability to preserve each and every visit. It also asserted the caseworkers' narratives provided an assessment of each visit and reflected what had occurred.

A trial court may submit a spoliation instruction only when if it finds (1) the spoliating party acted with the specific intent to conceal discoverable evidence and a less severe remedy would be insufficient to reduce the prejudice caused by the spoliation or (2) the spoliating party acted negligently, causing the other party to be irreparably deprived of any meaningful ability to present a claim or defense. *See Brookshire Bros. Ltd. v. Aldridge*, 438 S.W.3d 9, 14 (Tex. 2014). Even when the trial court finds that spoliation occurred, it must exercise its discretion in imposing a remedy by weighing the spoliating party's culpability and the prejudice to the nonspoliating party. *Id*. at 22–24.

Here, there was no proof that the Department acted with the specific intent to conceal evidence or, if the Department acted negligently, the spoliation irreparably deprived appellant of any meaningful ability to present her defensive theory that she could parent her children. Notably although appellant was obviously present at all videotaped visits, she did not argue or present evidence that the missing videos were more favorable to her than the ones that were

–15–

preserved. At trial, the Department caseworker testified that the preserved visitation videos were similar to and representative of what occurred at the other visits. Moreover, the caseworker's narratives and other witnesses provided evidence of appellant's conduct and interactions with the children during visits. Mother was also able to testify to her interactions with the children during all of her visitations. Furthermore, appellant's expert witness Jessica L. Rogers provided testimony based on her review of the existing visitation videos and notes from appellant's counselor and the children's therapist that was very complimentary of appellant's parenting abilities. There is nothing in the record to indicate that the missing video recordings would not have been cumulative of other competent evidence regarding appellant's parenting ability, including the five video recordings that were preserved. Accordingly, we conclude that the trial court did not abuse its discretion in denying appellant's request for a spoliation instruction. We resolve appellant's fifth issue against her.

### F.     MSA and Affidavit of Voluntary Relinquishment

In her seventh and eighth issues, appellant raises various complaints about the MSA she signed in September 2014. She first argues that the trial court improperly enforced the MSA at the December 2014 permanency review hearing because there was no written motion to enforce before the Court at that time. She also asserts that after the Department filed its written enforcement motion, the trial court denied her request to put on evidence at the hearing regarding whether appellant had violated the MSA. Finally, she argues that the trial court abused its discretion in ordering her to surrender the signed affidavit of relinquishment pursuant to an unenforceable MSA.

No judgment may be reversed on appeal unless the error complained of probably caused rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a)(1). In the order of termination before us, the trial court rendered an order finding by clear and convincing evidence four

–16–

predicate and independent statutory grounds for the termination of appellant's parental rights, specifically, subsections (D) (placed or knowingly allowed children to remain in conditions or surroundings endangering their physical or emotional well-being), (E) (engaged in conduct or knowingly placed children with persons who engaged in conduct endangering the children's physical or emotional well-being), (K) (execution of an unrevoked or irrevocable affidavit of relinquishment), and (O) (failure to comply with the provisions of court order) of section 161.001. *See* TEX. FAM. CODE ANN. § 161.001(1)(D), (E), (K), and (O) (West 2014).

Because the trial court's order of termination was not based on the MSA, appellant has not established that any asserted errors in connection with its enforcement caused rendition of an improper judgment. Likewise, to the extent that appellant argues her affidavit of voluntary relinquishment should not have been filed with the court due to the alleged infirmities of the MSA and the affidavit itself, we note that the affidavit of voluntary relinquishment was but one of four grounds on which the termination order was based. The Department is only required to prove one statutory predicate ground to support a termination of parental rights. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Thus, when multiple grounds are found by the trial court, we may affirm on any one ground. *See id*. When an appellant does not attack every independent ground that supports a judgment, we must affirm. *See Oliphant Fin. LLC v. Angiano*, 295 S.W.3d 422, 423–24 (Tex. App.—Dallas 2009, no pet.). Appellant has not challenged the other three statutory grounds that, with the finding that termination is in the children's best interest, support the termination order. Having failed to do so, she cannot show reversible error and we need not address her complaint regarding the affidavit as it relates to the grounds of termination. *See Perez v. Tex. Dept. of Protective & Regulatory Servs.*, 148 S.W.3d 427, 433–34 (Tex. App.—El Paso 2004, no pet.).

G.    Reimbursement of Attorney's Fees

In her tenth issue, appellant challenges the trial court's award of $3,979 in favor of Kaufman County and against her for attorney's fees incurred after the Department challenged her indigent status.  She asserts no statute permits the award of attorney's fees to a non-party. We first note that it appears from our review of the record, that appellant did not preserve this issue because she failed to raise her complaint in the trial court.  *See* TEX. R. APP. P. 33.1. Nevertheless, even if we assume the issue was properly preserved we are not persuaded that the trial court erred in ordering the fee reimbursement.

Section 107.015 of the family code provides that a court-appointed attorney ad litem for a parent or child is to be paid for by the parents unless the parents are indigent.  TEX. FAM. CODE ANN. § 107.015(a) (West 2014).  Pursuant to subsection 107.015(c) the fees of appointed counsel for an indigent parent shall be paid from the county's general fund.  TEX. FAM. CODE ANN. § 107.015(c).  Here, the record reflects that the Department filed a motion to reconsider Mother's indigency and the trial court found that she was no longer indigent as of March 2014. Accordingly, the trial court ordered her to repay attorney's fees totaling $3,979.  Mother does not dispute the trial court's finding that she was no longer indigent.  Pursuant to subsection 107.015(b), if the court determines a parent is able to defray fees of an appointed attorney, it may order the fees paid by the parent and those sums may be taxed as costs to be assessed against the parent.  TEX. FAM. CODE ANN. § 107.015(b).  Because section 107.015(b) specifically authorizes the court to order payment of court-appointed attorney's fees incurred upon a finding of appellant's ability to pay them, it was not error for the trial court to order appellant to repay the fees to the county which was responsible for their payment.  We resolve appellant's tenth issue against her.

H.     Violation of Evidence Rule 612

In her twelfth issue, appellant contends the trial court abused its discretion in refusing to allow her to review the investigative report that a Department investigator used to refresh her recollection before testifying. The record reflects that after appellant asked to examine the report pursuant to evidence rule 612, the Department voiced concerns that the report contained confidential information and objected to turning the report over unredacted. The Department further asserted appellant had already been provided a redacted copy of the investigative report in discovery. Concluding there was a sufficient disclosure to appellant of the information reviewed by the witness, the trial court denied her request. A copy of the investigative report was included in our record for appellate purposes.

On appeal, appellant complains the report contained facts relevant to a possible venue challenge and to dispute the Department's assertion that appellant abandoned Youngest Child at the hospital. Notably, appellant does not assert this information was not in the redacted copy of the report she received in discovery. Regardless, she has not explained how not having this information at trial probably led to the rendition of an improper judgment. Other evidence at trial indicated that appellant was not living in Kaufman County at the time the Department became involved with the family. Moreover, abandonment was not a ground for termination advanced by the Department. Accordingly, even assuming the trial court erred in refusing appellant's trial request to review the investigative report, she has not demonstrated any reversible error in connection with her complaint. *See* TEX. R. APP. P. 44.1. We resolve appellant's twelfth issue against her.

I.     Sufficiency Challenges to Best Interest Finding

In her thirteenth issue, appellant challenges the legal and factual sufficiency of the evidence to support the finding that termination of her parental rights was in the children's best

interest. The Department asserts appellant did not preserve her legal sufficiency challenge. We agree with the Department.

After a jury trial, a legal sufficiency complaint must be preserved by a motion for instructed verdict, a motion for judgment notwithstanding the verdict, an objection to the submission of the question to the jury, a motion to disregard the jury's verdict to a vital fact question, or a motion for new trial. *In re D.J.J.*, 178 S.W.3d 424, 426–27 (Tex. App.—Fort Worth 2005, no pet.). Our review of the record reveals that appellant did none of these things to preserve her legal sufficiency complaint. Although appellant did file a motion for new trial, the motion challenged only the factual sufficiency of the best interest finding. Accordingly, appellant's legal sufficiency complaint is waived on appeal and we limit our review to whether the evidence is factually sufficient to support the best interest finding.

When analyzing a factual sufficiency complaint, we review the entire record to determine whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002) (citing *In re C.H.* 89 S.W.3d 17, 25 (Tex. 2002)). We may conclude the evidence is factually insufficient only if, in light of the entire record, the disputed evidence is so significant that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. *See In re J.A.S.C.*, 430 S.W.3d 544, 548 (Tex. App.—Dallas 2014, no pet.).

There is a strong presumption that it is in the best interest of the children to preserve the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). But a child's need for permanence has been recognized as paramount when considering the child's present and future needs. *See In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.). When considering a sufficiency challenge to the best interest finding, we consider among other things, the *Holley* factors which include the children's desire, the children's current and future emotional

–20–

and physical needs, the current and future emotional and physical danger to the children, the parent's parenting abilities, any available programs to assist the parent to promote the children's best interest, plans for the children by the parent or the Department, the stability of the home or proposed placement, the parent's acts or omissions suggesting the existing parent-child relationship is not a proper one, and any excuse for the parent's acts or omissions. *See In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). Lack of evidence of one or more of these factors does not preclude a finding that termination is in the best interest of the children. *See C.H.*, 89 S.W.3d at 27. Conversely, evidence of a single factor may be adequate in a particular case to support a finding that termination is in the children's best interest. *In re A.T.,* 406 S.W.3d 365, 370–71 (Tex. App.—Dallas 2013, pet. denied). Nevertheless, scant evidence of each factor will not support such a finding. *Id*.

Of particular concern at trial were injuries the two older children sustained during appellant's overnight possession during phase two. The caseworker testified that Middle Child had some marks on his face upon his return from one visit. Appellant explained the marks were sustained when the child fell on some garden rocks in front of her apartment while she was putting Youngest Child in a car seat. The following weekend, Oldest Child and Middle Child returned from their visitation with additional marks and Middle Child had a black eye. Appellant reported Middle Child sustained the bruise near his eye when he fell going up the stairs to her apartment. She also indicated Middle Child had scratched Older Child on the face while the two were in the bathtub fighting over a toy. Although the Department conceded appellant did not intentionally cause these injuries to the children, there were concerns that the injuries were the result of appellant's inability to properly supervise and provide for the children's needs. The children's therapist testified that the boys began exhibiting aggression and non-compliance after

home visits with appellant began. She also observed evidence of bruises and fighting after the children returned from appellant's care and she did not see these things from the school, daycare, or the foster home. According to the children's therapist, Oldest Child in particular verbally expressed fears or concerns leaving the foster home.

Other evidence showed that appellant continued to struggle with important issues and did not presently have the skills to provide for the children's needs now and in the future despite her completion of various parenting and other programs. Although appellant testified she had "been clean" since May 5, 2013, the Department caseworker testified that in June 2014, more than halfway through the case, appellant admitted to social drinking. Appellant's counselor indicated she would not recommend a client recovering from drug use to continue to drink alcohol. There was also evidence that in addition to appellant's abusive relationship with Father, she had a relationship with Ben Smith during the pendency of this case that involved domestic violence. The MSA provided, "No other person shall be in Mother's company during Mother's possession of the children." Yet foster mother testified that after an overnight weekend visit with appellant, the children stated "Mommy's boyfriend has a hairy belly."

The caseworker opined that her observations of appellant's lack of routine, lack of structure, and increasing of injuries to the children while in appellant's custody made the caseworker concerned about the children's safety when they were with appellant and demonstrated appellant had not been able to apply what she learned in her services to keep the children safe. With respect to appellant's current parenting skills, she stated, "There's still a lack of redirection, a lack of structure, a lack of routine throughout the entire visit." The caseworker also testified about concerns regarding the disorganization and clutter in appellant's apartment and the cleanliness of her car during the period appellant was having overnight possession of the children. When asked if there was a pattern developing of appellant's inability to maintain a

clean and clutter free environment for the children, the caseworker agreed. Moreover, there was testimony that although appellant agreed to contact the children's therapist about the children's transition to living with her, she never did. There was also evidence that the children had secure attachments to appellant, loved her, and would seek out her affection during visits. But the children's therapist noted that in her sessions with the children, they did not talk a lot about appellant or draw pictures for her. When appellant was asked at trial about whether she had picked out a school for the children, she said she did, but could not remember the name. Appellant also did not know the cost of the children's daycare.

The foster parents and the children's therapist testified that the children were doing well in their current placement. The foster care parents stated they desired to adopt the children and a Department witness testified adoption by the foster parents was the Department's plan for the children. The caseworker also testified the children were happy and thriving in their foster home and opined it was in the children's best interest to remain in the foster home. She also indicated that if appellant's parental rights were terminated, the foster home could be a permanent placement for the children. The children's therapist also stated that the children were very bonded to the foster parents, that the foster family was one of the very best she had worked with, and during the time she had worked with them, the children never said anything negative about the foster family. It was her professional opinion that it was in the children's best interests to remain with the foster parents.

In contrast to this evidence, we recognize that other evidence reflects appellant has made considerable improvements in her life in the two years preceding the trial. When the Department first became involved with the family, appellant was addicted to drugs and had no job or stable home. Appellant and Oldest Child and Middle Child were living in a "dope house" that had no electricity when the Department removed the children from her care. Appellant also admitted

she did drugs when she was pregnant with Youngest Child and did not dispute evidence that all three children had tested positive for drugs at the time of their removal.

At trial, there was evidence that appellant has held her current job for about a year, and had been living in her own two-bedroom apartment for almost two years. There was also evidence that appellant completed all of the services required by the Department. She acknowledged the Department's intervention was necessary because she placed the children in an unsafe environment and exposed them to drugs and testified the Department not only saved the children but saved her. Appellant's counselor Chikeitha Owens testified that appellant did "really well" with therapy. Owens also observed appellant and the children at appellant's apartment and noted appellant was constantly trying to get some order with the children and was working on providing the children with structure. Owens thought with a little more time, appellant would succeed and that appellant had earned the right to keep her children.

One of appellant's sponsors from Narcotics Anonymous also testified on her behalf. He indicated he had known appellant for about two years and that she had worked through issues and continued with the program even when things got tough. He noted he and others from the group would continue to support her and help her. Although appellant's mother had died of cancer while this matter was pending, two of appellant's mother's friends testified that they would provide support if the children were returned to appellant. Appellant's expert witness testified that based on the counseling notes and visitation videos she reviewed, the children's attachments to appellant were very secure and appellant had the ability to parent the children.

Reviewing the evidence under the appropriate standard and giving due consideration to the evidence that the fact finder could have reasonably found to be clear and convincing, we conclude the jury could have formed a firm belief or conviction that terminating appellant's parental rights to the children was in their best interest. *See J.F.C.*, 96 S.W.3d at 266. The jury

could have considered evidence of appellant's past drug use, prior lack of a stable home or job, and involvement in at least two abusive relationships during the pendency of the case when determining whether appellant would be able to meet the needs of the children currently and in the future. *See In re O.N.H.*, 401 S.W.3d 681, 684 (Tex. App.—San Antonio 2013, no pet.) (past conduct probative of parent's future conduct when evaluating children's best interest). Although appellant had been drug-free for almost two years and had completed services required by the Department, the jury could have concluded evidence that appellant continued to drink alcohol socially, was still struggling to provide the children with structure and organization during home visits, and the children sustained injuries while in her possession suggested that she was not yet able to provide them with a safe and nurturing environment or a permanent and stable home.

Considering all the evidence in light of *Holley*, we conclude the evidence was factually sufficient to support the jury's finding by clear and convincing evidence that termination of appellant's parental rights was in the children's best interest. *See Holley*, 544 S.W.2d at 372. Accordingly, we resolve appellant's thirteenth issue against her.

## CONCLUSION

Having concluded that none of appellant's thirteen issues demonstrate reversible error, we affirm the trial court's order terminating her parental rights.

150501F.P05

/David W. Evans/
DAVID EVANS
JUSTICE