**Opinion filed October 19, 2023**



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00120-CV

_____

# IN THE INTEREST OF S.L.G. AND A.J.G., CHILDREN

On Appeal from the 29th District Court

Palo Pinto County, Texas

Trial Court Cause No. C50095

## M E M O R A N D U M   O P I N I O N

This is an accelerated appeal from an order in which the trial court terminated the parental rights of the mother and the father of S.L.G. and A.J.G. Only the father appealed. On appeal, the father (Appellant) presents two issues in which he challenges the legal and factual sufficiency of the evidence to support the trial court's findings. We affirm the trial court's order.

## I. *Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West 2022). To terminate one's

parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. *Id.* Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." FAM. § 101.007 (West 2019).

In this case, the trial court found that Appellant had committed two of the acts listed in Section 161.001(b)(1)—those found in subsections (D) and (E). Specifically, the trial court found that (1) Appellant knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the children's physical or emotional well-being—subsection (D)—and (2) Appellant engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being— subsection (E). The trial court also found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights would be in the best interest of the children. *See id.* § 161.001(b)(2).

To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, based on the entire record, a factfinder could have reasonably formed a firm belief or conviction about the truth of the allegations raised against the parent. *J.O.A.*, 283 S.W.3d at 345; *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). In this regard and under these standards, we note that the trial court is the sole arbiter of the credibility and demeanor of

witnesses and the weight to be afforded their testimony. *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (citing *In re J.L.*, 163 S.W.3d 79, 86–87 (Tex. 2005)).

With respect to the best interest of a child determination, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). Further, the best interest determination does not restrict proof to any specific factor or factors. *In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.). However, courts may use and consider the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals who seek custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement for the child; (8) the acts or omissions of the parent that may indicate that the existing parent–child relationship is not a proper one; and (9) any excuse for the parent's acts or omissions. *Id.*

To support a best interest finding, the Department is not required to prove each *Holley* factor; in some circumstances, evidence of the presence of only one factor will suffice. *C.H.*, 89 S.W.3d at 27; *In re D.M.*, 452 S.W.3d 462, 473 (Tex. App.—San Antonio 2014, no pet.). In fact, the same evidence that proves one or more statutory grounds for termination may also constitute sufficient, probative evidence illustrating that termination is in the children's best interest. *C.H.*, 89 S.W.3d at 28 (evidence that supports termination is also probative of the best interest determination); *C.J.O.*, 325 S.W.3d at 266; *In re J.O.C.*, 47 S.W.3d 108, 115 (Tex. App.—Waco 2001, no pet.).

The absence of evidence of some *Holley* considerations does not preclude the factfinder from reasonably inferring or forming a strong conviction or belief that termination is in the children's best interest, particularly if the evidence indicates that the parental relationship and the parent's conduct has endangered the safety and well-being of the children. *C.H.*, 89 S.W.3d at 27. This is so because the best interest analysis evaluates the best interest of the children, not the parent. *In re E.C.R.*, 638 S.W.3d 755, 767 (Tex. App.—Amarillo 2021, pet. denied) (citing *In re B.C.S.*, 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.)).

In this regard, the factfinder may measure a parent's future conduct by his or her past conduct and determine whether termination is in the children's best interest. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied); *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.). The factfinder may infer that a parent's past conduct that endangered the safety and well-being of the children may recur in the future if the children are returned to the possession of the parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *May v. May*, 829 S.W.2d 373, 377 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied). Further, the factfinder may infer from a parent's past inability to meet the children's physical and emotional needs an inability or unwillingness by the parent to meet the children's physical and emotional needs in the future. *J.D.*, 436 S.W.3d at 118; *see also In re A.S.*, No. 11-16-00293-CV, 2017 WL 1275614, at *3 (Tex. App.—Eastland Mar. 31, 2017, no pet.) (mem. op.).

## II. *Evidence Presented at Trial*

The record shows that the Department of Family and Protective Services (the Department) had been involved with Appellant and the children since 2018. The children were previously removed from the care of Appellant and the children's

mother (S.R.) because bruising was observed on the children and their home was extremely unsanitary; the children were later returned to Appellant in March 2021.

In August 2021, Department caseworkers and CASA volunteers observed bruising on A.J.G.'s arms and legs and several handprints "all over her bottom and back." Appellant claimed that the bruising developed after he grabbed A.J.G. by the arms as she was falling; he could not explain what caused the other bruising. Photographs of A.J.G. depicted the bruising and showed that A.J.G.'s hair was unkept, matted, and entangled with food. Bruising was also noted on S.L.G.'s shins and knees. Based on the results of the Department's investigation, it was determined that Appellant was responsible for the children's bruising.

At the time, the Department noted that the condition of the parents' home was extremely unsanitary. There was trash outside the home. Dirty clothes were spread throughout the home. The bathrooms were not clean. Several dogs were confined in a crate that had excessive dog feces in it. There was an abundance of rat and dog feces that had accumulated in the children's bathroom and bedroom. Rat feces was also observed on the children's beds and toys. A board in the hallway was "lifted up" and constituted a safety hazard. Excessive dog hair was in the home, some of which was found in A.J.G.'s vaginal area when she was later examined at the hospital. A.J.G. was characterized as a medically fragile child because of her premature birth and other health conditions; however, Appellant would not attend to A.J.G.'s medical needs. There were approximately ten snakes inside the home that Appellant kept as pets. Evidently, Appellant bred rats to feed to the snakes.

There was a history of domestic violence between Appellant and S.R. A service plan was created, ordered, and issued to Appellant and S.R., and they were requested to address the domestic violence issues and the unsanitary condition of their home. Appellant and S.R. made only minimal and sporadic efforts to clean

their home. They moved to another home in February 2022 but, and despite the Department's efforts to implement a "monitored return" arrangement, Appellant's pattern of maintaining unsanitary living conditions persisted and did not change. In fact, when caseworkers from the Department and others visited the home where Appellant and S.R. lived they noted that (1) the children's bedroom and the home in general was dirty and unkept; (2) there was an abundance of trash outside the home; (3) trash and open garbage bags were on the porch; (4) there was a strong odor of animal feces and urine inside the home; (5) dog and rat feces accumulations was in several rooms; (6) the cages where the dogs were confined were dirty and overflowing with feces; (7) the trash can inside the home was overflowing with trash; and (8) animal feces had accumulated in the kitchen area, the living room, the hallway, and a closet. Further, Appellant kept eleven python snakes of different sizes and lengths in the home. According to the Department and others, the condition of Appellant's home was unsafe and unsuitable for children.

The children were, again, removed from Appellant's and S.R.'s care. The Department, its caseworkers, and a CASA representative involved in the case thereafter recommended termination of Appellant's parental rights based on (1) the history of physical abuse inflicted upon the children by Appellant, (2) Appellant's lack of concern for the children's physical health and well-being, (3) the ongoing unsanitary condition of their home (which had not changed since the Department's involvement with the family), (4) their inability to maintain a clean and safe environment for the children, and (5) their failure to follow the court-ordered service plan.

Since their removal, the children have been in the care of foster parents who have provided a safe and stable environment for them; the foster parents have also expressed an interest in adopting the children if the parents' rights are terminated.

S.R. testified that she sent pictures of the children's bruises to a friend and expressed concern as to what caused the bruising. S.R. also admitted that Appellant was "aggressive" with the children.

Appellant testified that he could not explain what had caused A.J.G.'s bruising other than to say that she bruised easily, or that the bruising "probably" was the result of him holding her by the arm as she attempted to walk or by the children hitting each other. Nevertheless, he testified that he did not consider the children's bruising to be severe enough to require medical treatment. Despite evidence to the contrary, Appellant claimed that the condition of his home was "sufficient enough" and that he was able to keep the snakes "locked up" and away from the children. According to Appellant, he completed parenting classes and as a result he is no longer "as aggressive" with the children.

### III. *Analysis*

#### A. *Endangering Conduct*

In his first issue, Appellant challenges the legal and factual sufficiency of the evidence to prove grounds (D) and (E). Here, we must only address his challenge to the trial court's findings under subsection (D) *or* (E). *See In re N.G.*, 577 S.W.3d 230, 234–35 (Tex. 2019) (addressing due process and due course of law considerations with respect to appellate review of grounds (D) and (E) and holding that an appellate court must provide a detailed analysis if affirming the termination on either of these grounds). Because only one statutory ground is necessary to support termination, if we conclude that the evidence is legally and factually sufficient to uphold the trial court's finding as to either subsection, we need not address the arguments raised by Appellant as to the remaining subsection. *See* FAM. § 161.001(b)(1); *N.G.*, 577 S.W.3d at 234–35; *see also* TEX. R. APP. P. 47.1.

The record clearly supports the trial court's finding under subsection (E). The focus of subsection (E) is parental misconduct. *In re J.D.B.*, 435 S.W.3d 452, 463 (Tex. App.—Dallas 2014, no pet.) (citing *Castaneda v. Tex. Dep't of Protective & Regul. Servs.*, 148 S.W.3d 509, 521–22 (Tex. App.—El Paso 2004, pet. denied)). Subsection (E) "refers only to the parent's conduct, as evidenced . . . by the parent's acts . . . [and] the parent's omissions or failures to act." *In re S.K.*, 198 S.W.3d 899, 902 (Tex. App.—Dallas 2006, pet. denied). Thus, under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the children's well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re D.O.*, 338 S.W.3d 29, 34 (Tex. App.—Eastland 2011, no pet.).

Additionally, termination under subsection (E) must be based on more than a parent's single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re C.V.L.*, 591 S.W.3d 734, 750 (Tex. App.—Dallas 2019, pet. denied); *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied); *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.). The parent's offending conduct need not be directed at the children, nor must the children actually suffer any injury. *J.O.A.*, 283 S.W.3d at 345; *C.V.L.*, 591 S.W.3d at 750. Danger to the children's well-being may be inferred from the parent's misconduct alone. *C.V.L.*, 591 S.W.3d at 750. As such, a parent's conduct that subjects children to a life of instability endangers the children's physical and emotional well-being. *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied).

Domestic violence in the home can result in an unstable environment for children. *In re O.E.R.*, 573 S.W.3d 896, 905 (Tex. App.—El Paso 2019, no pet.). Moreover, exposing children to unsanitary living conditions endangers their physical and emotional well-being. *In re M.C.*, 917 S.W.2d 268, 270 (Tex. 1996) (a parent

8

endangered the children by allowing them to live in extraordinarily unsanitary conditions, which included the presence of garbage, animal feces, and roach infestation); *In re K.S.O.B.*, No. 01-18-00860-CV, 2019 WL 1246348, at *13 (Tex. App.—Houston [1st Dist.] Mar. 19, 2019, no pet.) (mem. op.) (the children were living in deplorable conditions and the home was unsanitary and had rancid odors); *In re C.L.C.*, 119 S.W.3d 382, 392 (Tex. App.—Tyler 2003, no pet.); *In re P.E.W.*, 105 S.W.3d 771, 777 (Tex. App.—Amarillo 2003, no pet.) (the children were exposed to unsanitary living conditions); *In re K.M.B.*, 91 S.W.3d 18, 24 (Tex. App.—Fort Worth 2002, no pet.) (the children lived in an unsanitary home that included lice, animal feces, rancid odors, and general filth).

Here, the evidence shows that Appellant engaged in conduct that endangered the children by physically abusing them, neglecting their medical needs, and exposing them to continuous, unsanitary, and deplorable living conditions. Appellant's pattern of misconduct has persisted over the years with no sign of improvement. Further, Appellant has demonstrated a preference of caring more for his animals, reptiles, and himself, than he does for his children. Based on the record before us, the trial court could have reasonably found and concluded by clear and convincing evidence that Appellant has engaged in a course of conduct that endangered the children's physical or emotional well-being. Any recent strides or attempts that Appellant claims to have made to overcome his past conduct and deficiencies do not negate or excuse his past conduct. *See In re J.F.-G.*, 627 S.W.3d 304, 317 (Tex. 2021).

We hold that the evidence is legally and factually sufficient to uphold the trial court's finding of termination under subsection (E). Accordingly, we overrule Appellant's first issue. Because only one statutory ground is necessary to support termination and because we have upheld the trial court's finding as to subsection (E),

we need not address Appellant's complaint regarding the trial court's finding as to subsection (D); although, in light of the evidence in the record before us, and if an analysis of this ground was required, we are reasonably certain that the trial court's finding as to subsection (D) would also be upheld. *See* FAM. § 161.001(b)(1); *N.G.*, 577 S.W.3d at 234–35; *see also* TEX. R. APP. P. 47.1.

B. *Best Interest of the Children*

In his second issue, Appellant challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of his parental rights would be in the best interest of S.L.G. and A.J.G.

With respect to the children's best interest, the evidence, as detailed and set forth above, shows that Appellant has engaged in a pattern of misconduct—he has endangered the children, physically abused them, neglected their medical needs, and exposed them to ongoing, deplorable, and extraordinarily unsanitary living conditions, even while this case was pending in the trial court below. Additionally, Appellant has failed to maintain a safe and stable environment for the children.

At the time of the final hearing on termination, both children were living in a safe and stable foster home and were doing very well there. The foster parents have also expressed an interest in adopting the children if the parent's rights are terminated. Appellant has not demonstrated an ability or a willingness to put the children's needs before either his own, his animals, or his reptiles, nor has Appellant shown that he can provide a safe, stable home and environment for the children. Further, the Department's caseworkers and the CASA volunteer involved in this case testified that it would be in the children's best interest to terminate Appellant's parental rights.

In light of the evidence presented and applying the *Holley* factors, we hold that the trial court could reasonably have formed a firm belief or conviction that

termination of Appellant's parental rights would be in the best interest of S.L.G. and A.J.G. *See Holley*, 544 S.W.2d at 371–72. Upon considering the record as it relates to the desires of the children (who are too young to express a preference), the emotional and physical needs of the children now and in the future, the emotional and physical danger to the children now and in the future, the parental abilities (or lack thereof) of those involved, the Department's plans for the children, Appellant's history of domestic violence and physical abuse, the inability of Appellant to provide a safe and stable environment for the children, Appellant's lack of justification for his misconduct, and Appellant's failure to correct the various deficiencies noted by the Department, we further hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of Appellant's parental rights is in the best interest of S.L.G. and A.J.G. *See id.* We defer to the trial court's finding as to the children's best interest, *see C.H.*, 89 S.W.3d at 27, and we cannot conclude in this case that the trial court's finding as to best interest is not supported by clear and convincing evidence.

Accordingly, we overrule Appellant's second issue.

## IV. *This Court's Ruling*

We affirm the order of the trial court.

W. STACY TROTTER

JUSTICE

October 19, 2023

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

11