**Opinion filed December 14, 2023**



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00144-CV

_____

## IN THE INTEREST OF A.V. AND J.M.R., CHILDREN

**On Appeal from the 318th District Court**
**Midland County, Texas**
**Trial Court Cause No. AD33600**

## M E M O R A N D U M   O P I N I O N

This is an accelerated appeal from an order in which the trial court terminated the parental rights of the mother, Appellant, to her two children, A.V.[1] and J.M.R.[2] Appellant presents three issues on appeal in which she challenges the legal and

---

[1]We use pseudonyms to protect the identities of the children. TEX. R. APP. P. 9.8(b)(2).

[2]The trial court also terminated the parental rights of A.V.'s acknowledged father and J.M.R.'s unknown father. A.V.'s biological father's parental rights were not terminated. No appeal has been filed on behalf of the fathers.

factual sufficiency of the evidence to support the trial court's findings, and the trial court's admission of hearsay statements. We affirm the trial court's order.

## I. *Termination Findings and Standards*

The termination of one's parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2023). To terminate one's parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U)[3] and that termination is in the best interest of the child. *Id.* Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." FAM. § 101.007 (West 2019).

In this case, after a bench trial, the trial court found that Appellant committed the act listed in Section 161.001(b)(1)(C): that Appellant voluntarily left the children alone or in the possession of another without providing adequate support of the children and remained away for a period of at least six months. *See* FAM. § 161.001(b)(1)(C). The trial court also found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights would be in the best interest of the children. *See id.* § 161.001(b)(2).

In reviewing a legal sufficiency challenge, we must decide whether a reasonable trier of fact could have formed a firm belief or conviction that its finding

---

[3]We note that the legislature recently amended Section 161.001 to include additional requirements for trial courts to consider in termination suits filed by the Department of Family and Protective Services (the Department) and a new ground for termination that relates to convictions for the solicitation of a minor; however, these amendments only apply to suits filed on or after September 1, 2023. Act of May 26, 2023, 88th Leg., R.S., ch. 728, §§ 1, 3, 2023 2023 Tex. Sess. Law Serv. 1770, 2177 (codified at FAM. § 161.001(b)(1)(V)); Act of May 29, 2023, 88th Leg., R.S., ch. 675, §§ 1, 8, 2023 Tex. Sess. Law. Serv. 1646–47 (codified at FAM. § 161.001(f), (g)). The original petition to terminate the parent-child relationship in this case was filed on August 11, 2022. We therefore apply the law in effect on the date the suit was filed.

was true. *In re J.W.*, 645 S.W.3d 726, 741 (Tex. 2022); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). "Bearing in mind the required appellate deference to the factfinder, we look at all the evidence in the light most favorable to the finding, assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *J.W.*, 645 S.W.3d at 741 (internal quotation marks omitted). "However, we may not disregard undisputed facts that do not support the finding," and the factfinder is the sole arbiter of the witnesses' credibility and demeanor. *Id.* (quoting *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021)) (internal quotation marks omitted).

In assessing whether the evidence is factually sufficient, we weigh disputed evidence contrary to the finding against all the evidence favoring the finding. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). Giving due deference to the finding, we determine whether, based on the entire record, a factfinder could have reasonably formed a firm belief or conviction about the truth of the allegations against the parent. *J.O.A.*, 283 S.W.3d at 345; *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002); *In re L.C.C.*, 667 S.W.3d 510, 512 (Tex. App.—Eastland 2023, pet. denied).

With respect to the best interest of a child determination, no unique set of factors need be proved. *L.C.C.*, 667 S.W.3d at 513; *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). Further, the best interest determination does not restrict proof to any specific factor or factors. *In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.). However, courts may use the non-exhaustive Holley factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future;

(4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

To support a best interest finding, the Department is not required to prove each *Holley* factor; in some circumstances, evidence of the presence of only one factor will suffice. *C.H.*, 89 S.W.3d at 27; *In re D.M.*, 452 S.W.3d 462, 473 (Tex. App.—San Antonio 2014, no pet.). Additionally, the same evidence that proves one or more statutory grounds for termination may also constitute sufficient, probative evidence illustrating that termination is in the children's best interest. *C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266.

The absence of evidence of some *Holley* considerations does not preclude the factfinder from reasonably inferring or forming a strong conviction or belief that termination is in the children's best interest, particularly if the evidence indicates that the parental relationship and the parent's conduct has endangered the safety and well-being of the children. *C.H.*, 89 S.W.3d at 27. This is so because the best interest analysis evaluates the best interest of the children, not the parent. *In re E.C.R.*, 638 S.W.3d 755, 767 (Tex. App.—Amarillo 2021, pet. denied) (citing *In re B.C.S.*, 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.)).

In this regard, the factfinder may measure a parent's future conduct by his or her past conduct and determine whether termination is in the children's best interest. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied); *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.). The factfinder may infer that a parent's past conduct that endangered the safety and well-being of the

children may recur in the future if the children are returned to the possession of the parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *May v. May*, 829 S.W.2d 373, 377 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied). Further, the factfinder may infer from a parent's past inability to meet the children's physical and emotional needs an inability or unwillingness by the parent to meet the children's physical and emotional needs in the future. *J.D.*, 436 S.W.3d at 118; *see also In re A.S.*, No. 11-16-00293-CV, 2017 WL 1275614, at *3 (Tex. App.—Eastland Mar. 31, 2017, no pet.) (mem. op.).

## II. *Evidence Presented at Trial*

In August of 2021, the Department investigated Appellant for neglectful supervision of A.V. and J.M.R., who were with Appellant's mother at the time. When the caseworker arrived to investigate, Appellant was "nowhere to be found." On August 5, 2021, Appellant spoke to the caseworker and the Department supervisor, but "wasn't coherent" because she was under the influence of alcohol, heroin, and methamphetamine. Due to Appellant's intoxicated state, the Department placed A.V. and J.M.R. with Appellant's cousin, Irma Marquez, and her husband, Jose Abelardo Marquez, Petitioners in the trial court below.

When Petitioners took possession of the children, one-year-old J.M.R. was not current on her vaccinations, had not been to her wellness checkups, and could not crawl, stand, speak, or eat solid food. Six-year-old A.V. was "scared of everything," shy, and was "far behind in her learning abilities." According to Irma, A.V. needed "a lot of counseling" because Appellant "did so much harm to her." By the time of the final termination hearing, A.V. was a straight-A student, and J.M.R. was learning English and Spanish. The children call Petitioners "Mom" and "Dad."

Appellant executed an affidavit relinquishing her parental rights to A.V. and J.M.R on November 16, 2021. On August 11, 2022, after being A.V.'s and J.M.R.'s

caregivers for over a year, Petitioners filed suit to adopt the children, and to terminate Appellant's parental rights. At the hearing, Appellant initially disputed signing the affidavit of voluntary relinquishment. She later said she did not remember signing it. Ultimately, Appellant acknowledged it was her signature, but argued that the affidavit of relinquishment was not the document she signed at the notary's office.

Gordon Lee Daman, Jr. testified that he notarized the affidavit of relinquishment that Appellant signed on November 16, 2021. The trial court determined that Appellant was not a credible witness, and that she indeed signed the affidavit admitted at the termination hearing.

Petitioners also elicited testimony showing that the Department had been involved with Appellant and her children since her arrest on October 11, 2017 for leaving her then-infant son, P.V.J.,[4] alone in her car. Appellant was placed on deferred adjudication community supervision for abandoning a child with the intent to return, a third-degree felony. *See* TEX. PENAL CODE ANN. § 22.041 (West Supp. 2023). Appellant's community supervision was later revoked in July of 2022 because of her drug use and failure to report to her probation officer.

The Department intervened again in July of 2020 after P.V.J. and four-year-old A.V. were injured in a motor vehicle accident. While Appellant and her ex-boyfriend, P.V.,[5] were "highly intoxicated and under the influence," P.V. crashed their car with A.V. and P.V.J. inside.

Appellant testified and admitted to using methamphetamine while pregnant with J.M.R. and that she continued to use drugs after J.M.R. was born. Appellant explained that throughout 2019, 2020, and 2021, she left her children with family

---

[4]P.V.J. was the subject-child of a separate termination suit and is not involved in this appeal.

[5]A.V.'s acknowledged father's rights were terminated, and Appellant revealed the identity of A.V.'s biological father prior to trial. His rights were not terminated, and he is not a party to this appeal.

members for six-month periods while she struggled with her drug addiction. Appellant also used drugs while caring for her children, and after A.V. and J.M.R. were placed with Petitioners.

In addition to Appellant's drug use, A.V. witnessed acts of domestic violence between Appellant and P.V. In July of 2020, while Appellant was pregnant with J.M.R., P.V. held Appellant, A.V., and P.V.J. hostage in a room. Appellant, who was under the influence of methamphetamine and marihuana at the time, stabbed P.V. as she attempted to escape. A.V. and P.V.J. were temporarily placed with Appellant's aunt and needed counseling after the automobile accident and P.V.'s unlawful restraint. *See* PENAL § 20.02. A.V. and P.V.J. were later returned to Appellant upon her completion of family-based services through the Department.

The trial court took judicial notice of Appellant's multiple cases involving her children, including the present case. Prior to the trial court making its ruling in this case, Appellant testified and stipulated that she (1) left A.V. and J.M.R. in Petitioners' possession without providing adequate support and (2) remained away from the children for at least six months. *See* FAM. § 161.001(b)(1)(C). Appellant asked the trial court to terminate her parental rights only on that basis, rather than making express findings of endangerment under Sections 161.001(b)(1)(D) and (E). In accordance with the agreement between Appellant, her trial counsel, the trial court, and the parties, the trial court terminated Appellant's rights under subsection (C) and found that termination was in the children's best interest.

### III. *Analysis*

#### A. *Abandonment*

In her first issue, Appellant challenges the legal and factual sufficiency of the evidence to prove that she abandoned A.V. and J.M.R. under subsection (C). *See* FAM. § 161.001(b)(1)(C). Appellant does not dispute that she remained away from

7

her children for at least six months. Rather, she argues that she did not *voluntarily* leave her children with Petitioners because she was "forced" to do so by the Department. Appellant further asserts that she provided adequate support for her children.

A finding of abandonment under subsection (C) requires a showing that a parent has "voluntarily left the child . . . in the possession of another without providing adequate support of the child and remained away for a period of at least six months." FAM. § 161.001(b)(1)(C). A parent has "remained away" if the parent did not visit the child for six consecutive months from the date the parent voluntarily left the child with another. *In re J.G.S.*, 574 S.W.3d 101, 115 (Tex. App.—Houston [1st Dist.] 2019, pet. denied); *Jordan v. Dossey*, 325 S.W.3d 700, 727 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).

The element of "voluntariness" goes to whether the parent voluntarily left the child with another person. *See* FAM. § 161.001(b)(1)(C); *see J.G.S.*, 574 S.W.3d at 115–16 (citing *In re J.K.H.*, No. 06-09-00035-CV, 2009 WL 2948575, at *1, *3 (Tex. App.—Texarkana Sept. 16, 2009, no pet.) (mem. op.)). Compliance with a court order that grants one parent the right to designate the child's residence does not ordinarily constitute voluntarily leaving the child with another by the other parent. *See J.G.S.*, 574 S.W.3d at 116; *see also J.K.H.*, 2009 WL 2948575, at *3; *cf. In re H.S.*, No. 05-16-00950-CV, 2016 WL 7163864, at *5 & n.3 (Tex. App.—Dallas Dec. 6, 2016, no pet.) (mem. op.) (concluding that the evidence was legally and factually sufficient to support the trial court's finding that the father voluntarily left the child in the grandmother's possession where evidence showed that the father indicated his agreement with the court order).

Predicate ground (C) does not necessarily require that the parent personally support the child; rather, the parent only needs to "make arrangements for the

adequate support" of the child. *See Holick v. Smith*, 685 S.W.2d 18, 21 (Tex. 1985); *Jordan*, 325 S.W.3d at 727–28 (affirming termination under predicate ground (C) where the mother did not ensure that the child was adequately supported and there was no evidence of an understanding that the mother would not be sending support); *In re J.E.R.*, No. 04-19-00566-CV, 2020 WL 690642, at *2 (Tex. App.—San Antonio Feb. 12, 2020, pet. denied) (mem. op.); *In re C.J.A.*, No. 13-16-00635-CV, 2017 WL 2200301, at *2 (Tex. App.—Corpus Christi–Edinburg Mar. 16, 2017, no pet.) (mem. op.) (holding that there must be evidence of an agreement for one parent to support the child on the other's behalf to demonstrate that a parent "made arrangements" for adequate support for the child); *see also In re A.R.*, No. 02-18-00311-CV, 2019 WL 1186963, at *4 (Tex. App.—Fort Worth Mar. 14, 2019, pet. denied) (mem. op.) (affirming termination under predicate ground (C) where "there [was] no evidence that when Father left the children with Mother, she was able to support them or expected to do so without his assistance.").

Here, the evidence supporting the trial court's termination finding under subsection (C) consisted of Appellant's stipulation, which the trial court accepted without objection and which was supported by the testimony of other witnesses. Appellant neither renounces her stipulation nor challenges the voluntariness of her statements. Instead, she claims only that the evidence is insufficient to support the specific findings that she requested the trial court should make—termination based on a finding under subsection (C) only.

We conclude that Appellant's testimonial declaration constitutes a judicial admission. A judicial admission is an assertion of fact that acts as a formal waiver of proof. *Mendoza v. Fid. & Guar. Ins. Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex. 1980). As long as it is clear and unequivocal, and stands unretracted, it has conclusive effect and bars the admitting party from later disputing it. *Holy Cross*

*Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001); *Lee v. Lee*, 43 S.W.3d 636, 641 (Tex. App.—Fort Worth 2001, no pet.). This rule is based on the public policy that it would be absurd and manifestly unjust to permit a party to recover after she has sworn herself out of court by a clear and unequivocal statement. *In re A.E.A.*, 406 S.W.3d 404, 410 (Tex. App.—Fort Worth 2013, no pet.); *Lee*, 43 S.W.3d at 641.

Courts treat testimony as a judicial admission if: (1) the testimony relied upon was made during the course of a judicial proceeding; (2) the testimony is contrary to an essential fact embraced in the theory of recovery or defense asserted by the person giving it; (3) the testimony is deliberate, clear, and unequivocal, and not merely a mistake or slip of the tongue; (4) giving the testimony conclusive effect would be consistent with the public policy that it would be unjust to allow a party to recover after she has sworn herself out of court; and (5) the testimony is not also destructive of the opposing party's theory of recovery. *Mendoza*, 606 S.W.2d at 694; *Khan v. GBAK Props., Inc.*, 371 S.W.3d 347, 357 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *Lee*, 43 S.W.3d at 641–42.

Appellant, under oath during a judicial proceeding "stipulate[ed] and admit[ed] that [she] voluntarily left the children in the possession of another," specifically, Petitioners, for at least six consecutive months without providing adequate support. Petitioners' first allegation in their petition to terminate tracked the language of Section 161.001(b)(1)(C), as did Appellant's testimonial admission. The trial court further clarified: "[Y]ou're stipulating to the first ground so that I can terminate your parent/child relationship existing between you and [A.V.] and you and [J.M.R.]?" Appellant replied that she was "agreeing to the first ground."

This clear, unequivocal, unretracted judicial admission precludes Appellant from now asserting on appeal that there is insufficient evidence to terminate her

10

parental rights under subsection (C). *See In re V.K.H.H.*, 647 S.W.3d 476, 479 (Tex. App.—Texarkana 2022, no pet.). We cannot entertain Appellant's argument that her sworn testimony is insufficient, especially when she did so to avoid unfavorable findings under subsections (D) and (E). It would be "absurd and manifestly unjust" to consider reversing the trial court's "agreed" termination finding after Appellant "has sworn [herself] out of court by a clear and unequivocal statement." *See A.E.A.*, 406 S.W.3d at 410. Therefore, we conclude that the evidence is legally and factually sufficient to support the trial court's termination finding under subsection (C).

Nonetheless, even without Appellant's judicial admission, the trial court could have reasonably concluded that Appellant voluntarily left her children with Petitioners. Appellant claimed that she was forced to place her children with Petitioners on August 5, 2021, and that she only acquiesced because she "was drunk," does "not really remember," and "didn't understand what was going on."

A person's actions while voluntarily intoxicated are, with few exceptions, considered knowing and voluntary under Texas law. *See*, *e.g.*, PENAL § 8.04 (West 2021), § 49.11 (West 2016); *J.F.-G.*, 627 S.W.3d at 308 (finding endangerment after the father crashed a vehicle while driving intoxicated, killing his son, and injuring another child). But we need not decide whether Appellant's inability to care for her children due to her intentional intoxication constitutes voluntary abandonment. While it is undisputed that on August 5, 2021, the Department determined that Appellant would be prohibited from having possession of and access to the children, Appellant made no effort to initiate the return of her children until over a year later.

Appellant acknowledged that she was not legally prohibited from contacting A.V. and J.M.R. prior to August of 2022. To the contrary—substantial evidence supports the trial court's finding that Appellant signed an affidavit of relinquishment of her parental rights on November 16, 2021. We will thus not disturb the trial

11

court's determination that Appellant voluntarily left A.V. and J.M.R. with Petitioners. *See*, *e.g.*, *H.S.*, 2016 WL 7163864, at *5 (finding that the father voluntarily left the child with the grandmother because his conduct in the conservatorship proceedings indicated his agreement that the grandmother would care for the child).

The trial court could have also formed a firm belief or conviction that Appellant did not provide her children with adequate support. In June of 2022, Appellant offered Irma money, food stamps, and insurance cards for the children. A month later, she expressed a willingness to buy A.V.'s school supplies. Petitioners declined Appellant's offers, and Appellant never provided anything for the children. Appellant's infrequent bids or random offers to contribute a form of support for the children are not tantamount to adequate support. *See In re D.D.V.*, No. 04-21-00159-CV, 2021 WL 3887710, at *3 (Tex. App.—San Antonio Sept. 1, 2021, no pet.) (mem. op.) ("occasional gifts are insufficient to fulfill a parent's obligation of support") (quoting *In re B.T.*, 954 S.W.2d 44, 49 (Tex. App.—San Antonio 1997, pet. denied)).

Moreover, Appellant failed to ensure that Petitioners could adequately support A.V. and J.M.R. prior to voluntarily abandoning them, and she made no arrangements for their support. Appellant claimed that she never believed it was in A.V.'s and J.M.R.'s best interest to be placed with Petitioners. When asked whether she was certain that the children "were being taken care of," Appellant responded: "No." Therefore, according to Appellant, she believed that her children were not being adequately supported. Yet, and despite this, Appellant made no arrangements for the children's support and allowed them to remain with Petitioners. *See In re J.R.*, 319 S.W.3d 773, 776–77 (Tex. App.—El Paso 2010, no pet.); *In re K.M.B.*, 91 S.W.3d 18, 26 (Tex. App.—Fort Worth 2002, no pet.); *see also A.R.*, 2019 WL

1186963, at *4; *In re A.T.C.*, No. 07-08-00258-CV, 2008 WL 5204747, at *3 (Tex. App.—Amarillo Dec. 12, 2008, no pet.) (mem. op). Because the record overwhelmingly supports the trial court's termination finding under subsection (C), we overrule Appellant's first issue.

B. *Best Interest of the Children*

In her second issue, Appellant challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of her parental rights would be in the best interest of A.V. and J.M.R.

After Appellant stipulated to the termination of her parental rights pursuant to subsection (C), her attorney asked: "[A]nd you understand the judge will find that it's in the children's best interest. Correct?" Appellant replied: "Yes, I understand." Neither she nor her attorney expressly admitted that termination was in A.V.'s and J.M.R.'s best interest. While this weighs heavily in favor of the trial court's findings, it is not dispositive. *See In re A.C.*, 560 S.W.3d at 632–33; *In re J.H. III*, 538 S.W.3d 121, 125 (Tex. App.—El Paso 2017, no pet.) ("the paramount concern is the best interest of the child, and the niceties of the procedural rules of pleading will not be used to defeat that interest") (quoting *Green v. Green*, 850 S.W.2d 809, 811 (Tex. App.—El Paso 1993, no pet.)). After considering the evidence as set forth above and the *Holley* factors, we conclude that the trial court's best-interest finding is supported by clear and convincing evidence.

We note that an affidavit of voluntary relinquishment waiving one's parental rights itself "can be ample evidence to support a best-interest determination." *In re K.S.L.*, 538 S.W.3d 107, 111 (Tex. 2017). "A parent's willingness to voluntarily give up her child, and to swear affirmatively that this is in her child's best interest, is sufficient, absent unusual or extenuating circumstances, to produce a firm belief or conviction that the child's best interest is served by termination." *Id.* at 112. Here,

the trial court found that Appellant, with knowledge of the consequences, signed the affidavit voluntarily, and sufficient evidence corroborates that finding.

Nevertheless, evidence apart from the affidavit of relinquishment justifies the trial court's best-interest finding. Appellant engaged in a pattern of misconduct—she endangered the children, neglected their physical, emotional, and medical needs, and exposed them to her ongoing drug use and unstable or unpredictable living conditions. Nothing in the record, including Appellant's testimony, shows that she ever maintained a safe and stable environment for her children.

A.V., who was six years old when she began living with Petitioners, endured years of Appellant's drug abuse and the acts of domestic violence between Appellant and P.V. A.V. sustained a fractured collarbone when P.V. crashed their car while he and Appellant were using drugs. She was behind in school, fearful all the time, and needed counseling. When asked about Petitioners adopting her, A.V. expressed excitement, and "believe[d] that this adoption [would] be in her best interest."

The record shows that the children are in a safe and stable home with Petitioners, who have tended to their needs and will continue to do so. Both A.V. and J.M.R. have flourished and improved physically, mentally, and emotionally since living with Petitioners. Petitioners have provided ample emotional and monetary support for A.V. and J.M.R. and have sought to adopt the children after one and one-half years of caring for them.

Appellant, by contrast, has not demonstrated an ability or a willingness to put the children's needs before her own, nor has she shown that she can provide a safe, stable home and environment for the children. In fact, Appellant's immediate plan for the children if she was awarded possession did not even involve them living with her—Appellant testified that she envisioned (1) her children staying with her aunt, (2) having "regular visits," and (3) the children "eventually transition[ing] home."

14

A.V. and J.M.R. were cared for by either Appellant's aunt or mother throughout 2019 and 2020, and the future would apparently be no different were they returned to Appellant.

Based on the desires of the children (one of whom is too young to express a preference), the emotional and physical needs of the children now and in the future, the emotional and physical danger to the children now and in the future, Appellant's lack of parental abilities, Petitioners' plans for the children, Appellant's history of domestic violence and drug abuse, her inability to provide a safe and stable environment for the children, and the lack of justification for her misconduct, we hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of Appellant's parental rights is in the best interest of A.V. and J.M.R. *See Holley*, 544 S.W.2d at 371–72.

Accordingly, we overrule Appellant's second issue.

C. *Evidentiary Ruling: Hearsay*

Appellant contends in her third issue that the trial court erroneously admitted statements made by A.V., which Appellant contends are hearsay, "without showing each of the prerequisites of the Texas Family Code." Beyond this conclusory statement, Appellant points to nothing in the record to clarify this issue or to support her argument. *See* TEX. R. APP. P. 38.1(g)–(i).

Although briefs are to be "liberally, but reasonably, construed so that the right to appellate review is not lost by waiver," an issue is only sufficient if it directs the reviewing court's attention to the error about which the complaint is made. *Horton v. Stovall*, 591 S.W.3d 567, 569 (Tex. 2019) (per curiam) (citing TEX. R. APP. P. 38.9); *see also* TEX. R. APP. P. 38(i) (requiring "appropriate citations to authorities and to the record"). "[W]e do not and cannot assume the responsibility of doing the parties' briefing for them." *De Los Reyes v. Maris*, No. 02-21-00022-

CV, 2021 WL 5227179, at \*9 (Tex. App.—Fort Worth Nov. 10, 2021, no pet.) (mem. op.) (citing *Bolling v. Farmers Branch Indep. Sch. Dist.*, 315 S.W.3d 893, 895 (Tex. App.—Dallas 2010, no pet.)).  Simply put, we are not advocates for any of the parties, even when a party is pro se.  *Id.*

Because Appellant has not directed us to any of the trial court's evidentiary rulings of which she now complains, she presents nothing for our review.  *See* TEX. R. APP. P. 33.1.  Accordingly, Appellant's third issue is overruled.

IV.  *This Court's Ruling*

We affirm the order of the trial court.


W. STACY TROTTER

JUSTICE


December 14, 2023

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.